## POST *vs.* HOVER and others.

A testator, by the 2d clause of his will, devised a part of his homestead farm to his three grandchildren, Erastus, Mary E. and John Hover, share and share alike, but subject to the payment of debts and legacies, and to the *conditions* thereinafter stated. These conditions were, that they, being minors, were not to *take said estate* until they should severally arrive at the age of twenty-one years; with a further provision that in case of the death of either before that age and without issue, the survivors or survivor should take such share; and in case of the death of all, under age and without issue, it should go to the testator's son John in fee. The testator then directed that during the minority of the grandchildren his son John should *take charge* of, and have the *management* of the said estate, and out of the *avails* should *support* the grandchildren and their mother; and he appointed

his son John their *guardian,* and as such guardian he was *to have charge* of their estate. Out of the surplus of the avails of the estate, over and above such support, (if any,) his son John was directed to pay the debts and legacies charged thereon; and, after doing so, to invest at interest any surplus that might remain, for the use and benefit of the grandchildren, to be paid over to them at the age of twenty-one. He was not to be made liable or account-able for losses in the *management* of the estate, unless for gross neglect, &c. The testator also directed that so long as Mary H., the mother of his said grandchildren, and the widow of his deceased son Peter, should remain the widow of his son, she should remain in the testator's mansion house and superintend the household affairs, and be supported out of the avails of the property devised to the grandchildren.

*Held* 1. That the intent of the testator, as appearing from the terms of the de-vise, was as follows: 1. A devise of the real estate to the three grandchil-dren, in fee, to take effect in possession on their arriving at the age of twenty-one years. 2. In case either of them should die before the age of twenty-one and without issue, a devise over to the survivors, and if they should all die, to the testator's son John, in fee. 3. A devise of the fee in trust, by implication of law, to John, during the minorities of the grand-children, and until the youngest grandchild should arrive at the age of twenty-one years.

2. That the trust or direction to the testator's son John to manage and control the estate, and receive and apply the avails thereof, during the minorities of the grandchildren, was *void,* as involving, necessarily, a suspense of the power of alienation during the minorities of the *three* grandchildren. And that the trust was not saved, as a valid trust, by the provisions of section 55 of 1 *R. S.* 728.

3. That the whole devise, including the illegal trust, was not so closely inter-woven, in its several parts, but that the valid could be detached from the void provisions, and preserved, without doing violence to the testator's in-tentions.

4. That the main devise to the infant grandchildren and to the testator's son John, was valid; and that the same took effect during the respective minor-ities of the grandchildren, as well as afterwards. And that the estate vested in the grandchildren immediately on the death of the testator, subject to be divested or determined by their death under age and without issue.

5. That the provision for the residence of the mother of the infant devisees in the mansion house of the testator, and for her support out of the avails of the estate, during her widowhood, was valid.

6. That during the minorities of the grandchildren the estate descended to the infant devisees of the testator, subject to the charges named in the will, in-cluding the charge for the residence and support of the widow.

7. That in all other respects the provisions of the will were valid, and capable of being enforced.

The courts have latterly leaned more and more to the preservation of such parts

of a will as may be separated from the rest without a disruption of the whole. *Per* HOGEBOOM, J.

It is a well established rule that where the devises are distinct, or one part can safely be detached from another, without disturbing the relation or continuity of the whole, it should be done. *Per* HOGEBOOM, J.

THIS action was brought to obtain a judicial construction of a portion of the last will and testament of John Hover, deceased. It was tried at the Columbia circuit, held in September, 1858, Hon. GEO. GOULD, J. presiding, who directed that a verdict be entered against the plaintiffs, establishing each and all the provisions of the said last will and testament which are in controversy in this suit, subject to the opinion of this court at a general term. The portions of the will sought to be questioned are as follows:

"*Secondly:* I give, devise and bequeath unto my three grandchildren, viz. Erastus Hover, Mary Elizabeth Hover and John Hover, infant children of my son Peter, all that part of my homestead farm, so as to include the dwelling house, out buildings and orchard, I purchased of the widow Rouse. Said tract is bounded as follows: (*Here described by metes and bounds.*) To have and to hold the same to my said three grandchildren above named, share and share alike, subject, however, to the conditions hereinafter stated, and to the payment of all my just debts and funeral expenses, and to the payment of all such legacies as I shall charge upon this part of my estate so devised to my said grandchildren.

Whereas, the three grandchildren above named, to whom I have devised that portion of my homestead farm, are now all minors under the age of twenty-one years: now it is my will and pleasure that they are not to take said estate until they severally arrive to the full age of twenty-one years; and in case of the death of either of them before arriving to the age of twenty-one years without issue lawfully begotten, the survivors or survivor of them to take the share of such as may die without issue before a division is to take place; and should all of said three grandchildren above named happen to die, without leaving lawful issue, before they arrive to the full age

of twenty-one years, then and in such case, I give said real estate to my son John Hover, his heirs and assigns for ever.

It is my further will and pleasure, and I do so order and direct, that during the minority of said three grandchildren, my son John Hover shall take charge of, and have the management of, that part of my real estate immediately after my decease, and out of the avails of said estate my said son John shall support my said grandchildren and their mother Mary, if she remain single; and I do hereby nominate, constitute and appoint my son John Hover, guardian of my said three grandchildren above named, during their minority, and as such guardian to have charge of their estate.

And whereas, I desire to make provision for the support of my daughter-in-law Mary Hover, widow of my deceased son Peter: now it is my will that so long as Mary Hover, the widow of my deceased son Peter, shall remain single and continue the widow of my said son, she shall remain in my mansion house and superintend the household affairs, and be supported out of the avails of that part of my estate herein devised to my three grandchildren above named, children of said Mary and Peter Hover; but in case she should again intermarry, then the provision for the support and maintenance is to cease, and she no longer will be permitted to remain in my said mansion house or upon my said farm; and in case of the death of all my said three grandchildren without issue before they arrive at the full age of twenty-one years, so that the said real estate should fall to my son John, as above stated, then I direct that upon the happening of such an event that my son John Hover shall pay over to my daughter-in-law Mary, widow of my deceased son Peter, the sum of one thousand dollars, which shall be in full of her maintenance and support, and in full of all claims she might have against my estate.

It is my further will and pleasure, and I do so order and direct, that my son John shall, after supporting my said three grandchildren and their mother, if there shall be any surplus

arising from the avails of this part of my estate devised to them, pay and discharge the debts and legacies charged thereon; and after the payment of all debts and legacies charged thereon, then I direct that my said son shall invest at interest such surplus for the use and benefit of my said grandchildren, to be paid over to them when they severally arrive to the full age of twenty-one years, share and share alike.

*Item :* Whereas, I have in this my will directed my executors to pay all my debts, funeral expenses and legacies, out of my personal estate, and have also made them liens upon that portion of my homestead devised to my three grandchildren, heirs of my son Peter : now to enable them to meet the payment of all the debts and legacies, I give and devise all the rest of my personal estate, not otherwise devised, unto my said three grandchildren, viz. Erastus Hover, Mary Elizabeth Hover and John Hover, heirs of my son Peter, share and share alike ; subject however to the payment of all my debts, funeral expenses and the legacies devised to my daughters and my son John, and which I have charged upon my homestead farm, devised to my said three grandchildren; but I desire to have it fully understood, that my said three grandchildren last named are not to enter into the possession of any part of the real estate devised to them until the youngest child shall arrive to the age of twenty-one years. But in regard to the personal estate I have devised to them, they shall take and receive their several shares or portions as soon as they each arrive at the age of twenty-one years."

Upon the above clauses of the will, the plaintiffs in their complaint raised the following questions :

1st. Whether the devise of that portion of the testator's homestead farm described in the second item of the testator's will, to his three grandchildren, Erastus Hover, Mary Elizabeth Hover and John Hover, with the contingent devise of the same farm over to John Hover in case of the death of all of said three grandchildren before they arrive at the full age

of twenty-one years without lawful issue, or any part thereof, is valid.

2d. Whether the charge and management of said farm committed to the said John Hover, after the death of the testator, and the power and discretion given to the said John Hover to, dispose of the avails of the farm as given by the testator in his will, are valid or invalid.

3d. Whether both the devise to the said three grandchildren of the testator, Erastus, Mary Elizabeth and John, of a portion of his homestead farm, with the said contingent devise over to John Hover in case of the death of all three grandchildren, either with or without the trust created in John Hover over the said premises, and the avails thereof during the minority of said grandchildren, do not suspend the power of alienation of such premises for more than two lives in being, contrary to the statutes against perpetuities.

4th. If the above mentioned devises and trusts are void, what are the rights and interests of the respective parties to this suit, in and to the property covered by them; and to what extent are the other provisions of said will destroyed or affected by such devises and trusts being void.

The complaint was filed by two of the children and heirs at law of the testator (in connection with their husbands) against all the other children, heirs at law, devisees, legatees and executors of the deceased. The executors and several of the children (including the alleged trustee under the 2d clause of the will) answered the complaint, claiming the validity of all the provisions of the will. Others answered, insisting that all the provisions of the second clause of the will were void, and that the property passed to the heirs at law. Several of the defendants were infants ; among others the three grandchildren, children of the testator's deceased son Peter, were infants under the age of fifteen years. All the infants appeared by a guardian ad litem and submitted their rights to the protection of the court. The will contained no residuary clause, as to the real estate. It was executed on the 28th day

of August, 1852, and was admitted to probate by the surrogate of Columbia county, on the 26th day of February, 1858. The testator was an inhabitant of Columbia county, and died there on the 18th day of December, 1857. The real estate in controversy is located in the town of Germantown, in the county of Columbia.

*R. H. King,* for the plaintiffs.

*C. B. Cochrane,* for defendants Nicholas Burgert and others, opposing the will.

*John Gaul, jun.,* for the executors and infants, and for the defendants John Hover and others, supporting the will.

*By the Court,* HOGEBOOM, J. The will in question is not altogether unambiguous in its terms. It becomes therefore important to determine the intent of the testator, before we attempt to settle the other question, whether this intent, as expressed in the will, is consistent with the rules of law.

The clause of the will more particularly in controversy devises a part of the homestead farm to his three grandchildren, Erastus, Mary Elizabeth and John Hover, share and share alike, but subject to the payment of debts and legacies and *to the conditions thereinafter stated.* These conditions are, that they being minors, *are not to take said estate* until they severally arrive at the age of twenty-one years; with a further provision that in case of the death of either before that age and without issue, the survivors or survivor shall take such share; and in case of the death of all under age and without issue, it shall go to the testator's son John, his heirs and assigns for ever. One of the principal questions discussed in the case was whether this devise conferred upon the grandchildren a present and vested interest, or only a future and contingent one, depending upon their attaining the age of twenty-one. But for a single expression there would seem to be no doubt

that the testator intended to vest in them a present estate in fee, determinable upon their death during their minority without issue.   The expression which raises a doubt in my mind, upon this subject, is, that they are not to *take the estate* until they severally attain full age.   I was strongly impressed on the argument with the idea, and am still inclined to think, that this clause means merely that they should not take said estate *in possession* until the time before mentioned.   For although the language is absolute and unqualified, that they shall not take the estate, it is susceptible of being referred to the question of *possession* as well as of *interest,* without doing violence to the terms of the will; and looking at the whole will, this seems most consonant to the testator's intentions. His object was to give them the property—except in the contingency before mentioned—and to provide for their support and that of their mother during the period that their tender age and inexperience should disqualify them for taking charge of the property.   During this period the revenues of the estate are directed to be applied and husbanded for this object, and the surplus, if any, is to be invested for their benefit.   Again, in a subsequent part of the will, the time of their taking possession of the estate is postponed until the youngest grandchild attains the age of twenty-one years; the time of their taking the estate having been fixed by the previous clause, at the period when they should *severally* attain the age of twenty-one years.   As the will therefore admits of this construction without violence to its language, and such construction harmonizes best with the intention of the testator, so far as it can be collected from other parts of the will, I conclude that according to the terms of this clause of the will the estate vested in the grandchildren immediately upon the death of the testator, subject to be divested or determined by their death under age and without issue.

But there is another clause of the will which demands particular notice.   The testator directs that during the minority of the grandchildren, his son John shall *take charge* of

and have the *management* of the said estate, and out of the *avails* shall *support* the grandchildren and their mother; and he appoints his son John their *guardian,* and as such guardian he is *to have charge of their estate.* Out of the *surplus* of the *avails* of the estate over and above such support, (if any,) John is directed to pay the debts and legacies charged thereon, and after doing so to *invest* at interest any surplus that may remain, for the use and benefit of the grandchildren, to be paid over to them when they shall severally arrive to the full age of twenty-one years. He is not to be made liable or accountable for losses in the *management* of the estate, unless for gross neglect, provided he does the best he can, which is left wholly to his sole judgment.

These provisions do not contain any express and specific devise of the estate. They may possibly be executed by persons charged with a mere *power* or *authority* over the estate, but they are more consistent with those large and discretionary powers conferred upon trustees, and strongly partake of the qualities and characteristics usually vested in functionaries of that description. Besides, in order to execute the authority conferred by the will, it is essential that John should have the possession of the lands, and the control of and the title to the rents and profits of the estate. And by statute, every such person shall be deemed to have a legal estate in the lands. (1 *R. S.* 727, § 47.) And powers very similar to, if not absolutely identical with those contained in this instrument, have been held to create a trust and to vest a legal title in the trustees by implication, to enable the trustees to collect and receive the rents and profits and income of the property, apply them to the purposes of the trust, and accumulate the surplus, as directed by the will. (*Bradley* v. *Amidon,* 10 *Paige,* 241, 2. *Leggett* v. *Perkins,* 2 *Comst.* 305. *Brewster* v. *Striker, Id.* 30 *to* 36. *Leggett* v. *Hunter,* 19 *N. Y. Rep.* 445.) There was, therefore, a trust created by the terms of the will, in the testator's son John, and he must be held to have been intended

to be vested, as trustee, with the legal estate. And it was to continue during the minorities of the children.

The terms of the devise, therefore, as expressed in the will, appear to be as follows: 1. A devise of the real estate to the three grandchildren in fee, to take effect in possession, on their arriving at the age of twenty-one years. 2. In case they die before twenty-one, and without issue, a devise over to the survivor, and if they all die, to John, (the testator's son,) in fee. 3. A devise of the fee in trust, by implication of law, to John, during the minorities of the grandchildren, and until the youngest grandchild shall arrive at the age of twenty-one years. Let us now see how far these provisions are consistent with the rules of law.

But for the restrictive clause in the will, that the infant devisees should not take the estate until they came of age, and the trust estate created by the will during the intervening period, the devise to them would take effect immediately, and would vest in them a determinable fee. (*Maurice* v. *Graham*, 8 *Paige*, 483. *Pond* v. *Bergh*, 10 *id.* 140. *Hunter* v. *Hunter*, 17 *Barb.* 29. *Christie* v. *Phyfe*, 19 *N. Y. Rep.* 344.) But, as before stated, the clause in question postpones the vesting of the estate in possession until the devisees reach their majority. And another clause vests the estate, in the mean time, in John Hover, the son of the testator, as trustee. This estate is *inalienable.* Its alienation would be in contravention of the trust, and is forbidden by statute. (1 *R. S.* 730, § 84, [65].) The interest of the beneficiaries in the rents and profits is equally inalienable. (§ 82, [63].) There being, then, no persons in being by whom an absolute fee in possession can be conveyed, there is a suspense of the power of alienation, according to the statutory definition. (1 *R. S.* 723, § 14.) This suspense necessarily continues for the minorities of the *three* grandchildren. The trust continues for that length of time; at least, such is my understanding of the terms of the will. It is therefore

void. (*Amory* v. *Lord*, 5 *Selden*, 416. *Hawley* v. *James*, 16 *Wend.* 61, 71, 171, 210, 225. *Lang* v. *Ropke*, 5 *Sandf. S. C. Rep.* 363.)

This trust is not saved as a valid trust, as the defendants' counsel suppose, by the provisions of section 55 of 1 *Revised Statutes*, 728. That shows the trust to belong to a valid class, but nevertheless requires it not to violate the law against perpetuities. As this has been shown to violate that law, it must fall.

The remaining question is, must the whole devise fail, including the illegal trust, as being so closely interwoven that they cannot be separated without doing violence to the testator's intentions; or may the principal devise to the grandchildren, and in a certain contingency, to his son John, be preserved as carrying out the general intent of the testator. The courts have latterly leaned more and more to the preservation of such parts of a will as may be separated from the rest without a disruption of the whole. This is done with a view to conform, as far as possible, to the wishes of the testator; for, although it may be usually assumed that each part of a will is made somewhat with reference to all the rest, yet it is every day's practice, and a well established rule, that where the devises are distinct, or one part can be safely detached from another, without disturbing the relation or continuity of the whole, it should be done. This rule was held to be sound, and was practically acted upon by the court of appeals in the late case of *Savage* v. *Burnham*, (17 *N. Y. Rep.* 561.) The same rule has been enforced in several other cases. (*Darling* v. *Rogers*, 22 *Wend.* 483. *Kane* v. *Gott*, 7 *Paige*, 521 ; *S. C.* 24 *Wend.* 641. *Depeyster* v. *Clendining*, 8 *Paige*, 295. *Haxton* v. *Corse*, 2 *Barb. Ch. Rep.* 506.)

In the present case, I am of opinion that the same course should be pursued. The main intent of the testator was to give this farm to his grandchildren, and to put it in their possession at an age when they would have the requisite judgment to manage and control it. This purpose can be effect-

uated. He had in view a subordinate object, to wit, to employ the income of this estate as a fund, during their minority, for their support, and for the payment of debts and legacies. This latter purpose can still be subserved, if necessary, as the debts and legacies are charged upon the estate. Their support during their minority may also be drawn from the same source, as the practical effect of avoiding the trust, and affirming the direct devise to the grandchildren, will be to devolve the estate during their several minorities, as well as afterwards, upon the infant devisees of the testator before named, in case the *cy pres* doctrine before mentioned is applied. The payment of the debts and legacies will still remain to be enforced, as was the intention of the testator, primarily, out of the personal estate; and then, in case there should be a deficiency, out of this real estate. I think, further, that the clause allowing the mother of the grandchildren to reside in the mansion house and be supported out of the avails of this estate, is sufficiently disconnected from the invalid parts of this devise to be allowed to stand. The devisees will therefore take the estate charged with this incumbrance. The only particular, therefore, in which the testator's intentions will be frustrated, will be in reference to the vesting of the possession of the estate in the grandchildren during their minority. And I do not regard this as of sufficient importance to overturn the whole devise, as the estate must necessarily be administered during their minority, through the agency of a legally appointed guardian or representative, and the precise practical result designed by the testator will thus be accomplished.

There should, therefore, be a decree upholding the main devise to the infant grandchildren, and to the testator's son John, and declaring that it is to take effect during their respective minorities, as well as afterwards; avoiding the trust or direction to John to manage and control the estate and receive and apply the avails of the estate during the minorities of the grandchildren; upholding the provision for the residence

of their mother, and her support out of the avails of the estate during the period named in the will; and further declaring, that during the minorities of the grandchildren the estate descends to the aforesaid infant devisees of the testator, subject to the charges named in the will, and that of the residence and support of the widow; and that in all other respects the provisions of the will be declared valid, and entitled to be enforced.

I have had some difficulty on the question of costs. It is becoming quite common to institute suits for the judicial construction of wills, and other instruments in which no other relief is sought than such construction, and in which the parties prosecuting them have no connection with, or interest in, the trust therein created, and have nothing in any aspect of the case but a mere legal estate in the premises. Of such cases a court of equity has no appropriate jurisdiction. The jurisdiction, if any, arises under the head of trust, unless some other recognized modes of relief, such as the taking and settling of an account, is coupled with a prayer for the construction of the written instrument. (*Smith* v. *Smith,* 4 *Paige,* 271. *Mitchell* v. *Blain,* 5 *id.* 588. *Wood* v. *Vandenburgh,* 6 *id.* 277. *King* v. *Strong,* 9 *id.* 94. *Bowers* v. *Smith,* 10 *id.* 193.) In the last case, it is held that an heir at law of a testator, or a devisee who claims a mere legal estate in the property, where there is no trust, is never allowed to come into a court of equity for the mere purpose of obtaining a judicial construction of the provisions of the will. (10 *Paige,* 200.) The plaintiffs are nearly in that position, and are, besides, wholly unsuccessful in the matters litigated, and the objection to the institution of this suit is taken in the answer of the principal defendants. Under such circumstances it does not seem equitable to charge the residuary estate, which passes by the will to the infant grandchildren, with the entire costs of the litigation. Nevertheless, the suit was probably commenced in good faith, and in conformity with what was supposed to be the usual practice. It is a fit

case, I think, for exercising the discretion of the court, and for charging the plaintiffs and all the unsuccessful defendants with their own costs respectively; those of the infant defendants to be a charge upon, and payable out of, their estate, and the costs of the executors and the trustee John Hover, to be a charge upon, and payable out of, the general fund or residuary estate, devised to these infant grandchildren above mentioned. The decree may contain a clause to that effect.

[ALBANY GENERAL TERM, September 5, 1859. *Wright, Gould* and *Hogeboom,* Justices.]