Abraham Post and others *v.* John Hover, Jr., and others.

If the purposes of a trust are separable, and some of them must arise within two lives, and there are others which can only become operative after the expiration of the two lives, the former may be sustained, but the latter cannot be.

To devise an estate by implication, there must be so strong a probability of such an intention, that the contrary cannot be supposed.

Where, by the terms of the will, the supposed devisee by implication is constituted a guardian, &c., and, *as such guardian,* is to have charge of the estate, the idea of a devise by implication is strongly repelled.

If the language of a deed or will is susceptible of two constructions, and, by adopting one construction, it would be unlawful, while, if the other were followed, it would be valid, the latter interpretation should be given.

| 33 | 593 |
| 113 | 11 |
| 33 | 593 |
| 131 | 339 |
| 33 | 593 |
| 145 | 368 |

Appeal from the judgment of the Supreme Court. The plaintiffs, being two of the heirs-at-law of John Hover, deceased, brought this action to determine the construction of his will, and to obtain such relief as they might be entitled to.

The testator made his will in 1852, and died in 1857. After directing the payment of his debts out of personal estate, he proceeds, in the second clause, as follows:

"I give, devise and bequeath unto my three grand-children, viz.: Erastus Hover, Mary Elizabeth Hover and John Hover, infant children of my son Peter, all that part of my homestead farm, so as to include my dwelling house, &c. (describing the premises, which are said to contain two hundred and twenty acres of land), to have and to hold the same to my said three grand-children above named, share and share alike, subject, however, to the conditions hereinafter stated, and to the payment of all my just debts and funeral expenses, and to the payment of all such legacies as I shall charge upon this part of my estate so devised to my said grand-children. Whereas, the three grand-children above named, to whom I have devised that portion of my homestead farm, are now all minors under the age of twenty-one years, now, it is my will and pleasure that they are not to take said

estate until they severally arrive at the full age of twenty-one years; and in case of the death of either of them before arriving at the age of twenty-one years, without issue lawfully begotten, the survivors or survivor of them to take the share of such as may die without issue before a division is to take place; and should all of said three grand-children above named happen to die without leaving lawful issue before they arrive at full age of twenty-one years, then, in such case, I give said real estate to my son John Hover, his heirs and assigns forever. It is my further will and pleasure, and I do so order and direct, that during the minority of the said three grand-children, my son, John Hover, shall take charge of, and have the management of that part of my real estate immediately after my decease, and out of the avails of said estate my said son John shall support my said grand-children and their mother Mary, if she remains single; and I do hereby nominate, constitute and appoint my son John Hover guardian of my said three grand-children above named during their minority, and as such guardian to have charge of their estate. And whereas, I desire to make provision for the support of my daughter-in-law, Mary Hover, widow of my deceased son Peter, now it is my will, that so long as Mary Hover, the widow of my deceased son Peter, shall remain single and continue the widow of my said son, she shall remain in my mansion house and superintend the household affairs, and be supported out of the avails of that part of my estate herein devised to my three grand-children above named, children of the said Mary and Peter Hover; but in case she should again intermarry, then the provision for her support and maintenance is to cease, and she no longer will be permitted to remain in my said mansion house or upon my said farm; and in case of the death of all my said three grand-children without issue before they all arrive at the full age of twenty-one years, so that the said real estate shall fall to my son John, as above stated, then I direct, that upon the happening of such an event, that my son, John Hover, shall pay over to my daughter-in-law Mary, widow of my deceased son Peter, the sum of one thousand dollars, which shall be in full of

her maintenance and support, and in full of all claims she might have against my estate.

"It is my further will and pleasure, and I do so order and direct, that my son John shall, after supporting my said three grand-children and their mother, if there shall be any surplus arising from the avails of this part of my estate devised to them, pay and discharge the debts and legacies charged thereon; and after the payment of all debts and legacies charged thereon, then I direct that my said son shall invest at interest such surplus for the use and benefit of my said grand-children, to be paid over to them when they severally arrive at the full age of twenty-one years, share and share alike; and for the care and attention that my said son John shall necessarily bestow in the management of my said estate, he be paid, over and above all his expenses and legal fees, the yearly sum of fifty dollars; and my son John shall not be made liable nor held accountable for any losses in the management of said estate, unless for gross neglect, provided he does the best he can for the interest of said estate, which is to be left wholly to his sole judgment."

The testator then gives legacies of $25 each to three of his daughters, one of whom and her husband are plaintiffs in the action, and legacies of $200 each to his four other daughters, one of which last and her husband are the other plaintiffs. These sums are directed to be paid out of the personal estate, and are also contingently charged upon the land devised to the three above mentioned grand-children.

He then makes certain provisions for other of his children and grand-children, and disposes of the residue of his personal estate as follows: "Whereas I have in this my will directed my executors to pay all my debts, funeral expenses and legacies out of my personal estate, and have also made them liens upon that portion of my homestead devised to my three grand-children, heirs of my son Peter: Now to enable them to meet the payment of all the debts and legacies, I give and devise all the rest of my personal estate not otherwise devised, unto my said three grand-children, heirs of my son Peter, share and share alike, subject, however, to the payment of

all my debts, funeral expenses and the legacies devised to my daughters and my son John, and which I have charged upon my homestead farm to my said three grand-children last named; but I desire to have it fully understood that my said grand-children last named are not to enter into the possession of any part of my real estate devised to them until the youngest child shall arrive at the age of twenty-one years; but in regard to the personal estate I have devised to them, they shall take and receive their several shares or portions as soon as they shall arrive at the age of twenty-one years." The real estate devised to his grand-children was of the value of about fifteen thousand dollars, and the personal property left by the deceased was of the value of about eight hundred dollars. The testator's son, John, and John P. Johnson were appointed executors. The testator left surviving him, his heirs and next of kin, eight sons and daughters, and seventeen grand-children, sons and daughters of deceased children.

The executors and certain of the heirs and next of kin answered, insisting that the provisions of the will were in all respects legal and valid, while others of the heirs in their answer claimed that the devise to the three grand-children was illegal and void. Those who were infants put in a general answer by their guardian *ad litem.*

The case was tried by a jury before Judge GOULD, when the facts above mentioned being proved or admitted, the judge ordered judgment for the defendants, subject to the opinion of the court at General Term.

The General Term gave judgment to the effect that the trust or direction to the testator's son, John, to manage and control the estate and receive and apply the avails thereof during the minority of the three grand-children, and to accumulate the surplus thereof, was invalid, and that the other dispositions, including the devise to the three grand-children, were valid and effectual.

The plaintiffs and two defendants who had insisted on the invalidity of the devise, appealed from the whole judgment, except the part which adjudged the alleged trust in John

Hover void. The three grand-children who were devisees of the homestead, did not appeal.

*John H. Reynolds*, for the appellants.

*A. J. Parker*, for the respondents.

DENIO, Ch. J. The Supreme Court considered that by the terms of the will there was a devise in trust by implication of that part of the homestead farm described in the second clause to John Hover; and that, as the trust term was to continue during the minorities of the three grand-children, the devise was void as creating an illegal perpetuity. But it was held that by rejecting this void devise there would remain a direct and immediate devise in fee to the grandchildren, subject, of course, to be defeated by the happening of the event by which the executory limitations were to take effect, and it was adjudged that such was the effect of the will. I concur in the result at which the Supreme Court arrived, but not upon the precise grounds on which it is placed in the opinion. That supposes the testator's intention to have been to withhold the legal estate from these devisees until they should all have arrived at the age of twenty-one years, and in the meantime to vest the title in the trustee. The change wrought in the will, by the application of this theory, would be to anticipate the gift to the grandchildren by the whole period of their minorities, to transform a devise, which was intended to be distant and contingent, into one which will be immediate and direct, and to subvert the power of management during the non-age of the children, which was carefully provided for by the testator. The cases referred to in the opinions do not go the length of authorizing so great a departure from the provisions of a will. In *Savage* v. *Burnham* (17 N. Y., 461), the devise was to the widow for life, then to the daughter of the testator for life, and then, if any of them should die without issue, to the survivors, not absolutely, but subject to the same limitations which were applied to their original shares; that is, the parts of shares which should accrue to

the surviving daughter upon the decease of one of them, were still to remain inalienable until the death of such survivors, in order to determine whether it should go to her issue or be subject to a further devolution of ownership in favor of the last survivor. It was held that the last devise only was void for remoteness, and that the daughters, respectively, took the estate intended for them; but that in the case of their death without issue, the estate in such shares would be undisposed of, and would devolve upon those who would be entitled to it under the laws regulating successions upon intestacy. In short, the determination was that the statute of perpetuities cut off the estates which were limited to take effect after the expiration of two lives, and that the disposition was valid during the two lives.

*Gott* v. *Cook* (7 Paige, 521, affirmed in the Court of Errors, 24 Wend., 641), is a case of the same kind. Certain contingent interests were given by will, in an estate devised in trust, which would not arise until after the expiration of two lives, in being at the death of the testator. It was held, that if the contingencies should happen, upon which these interests should arise, they would be property not disposed of, and would belong to the heirs-at-law and next of kin of the testator. So in *DeKay* v. *Irving* (5 Denio, 646), where there was a trust to pay the income to the testator's widow until a certain day named, and if she should die before that day, it was to be applied by the executors to the maintenance of the testator's family, the trust was held valid during the lifetime of the widow; but as, after that event, its continuance was not made dependent on lives, it was void from and after her death. The principle of these cases, and of some others which might be mentioned, is that if the purposes of a trust are separable, and some of them must arise within two lives, and there are others which must or may become operative only after the expiration of the two lives, the former may be sustained, but the latter cannot. (See *De Peyster* v. *Clendening*, 8 Paige, 295; *Haxton* v. *Corse*, 2 Barb. Ch., 506.) And where a limitation fails for remoteness under this rule, the gift does not go to the parties who were the beneficiaries of

the trust which has been declared valid, but to the heirs or representatives of the testator. I think, therefore, that if it were established that a trust term in this land was devised to Mr. Hover, it would have to be declared void for contravening the statute of perpetuities; and that the consequence would be, that the premises would descend to the testator's heirs-at-law. (1 R. S., 723, § 14.)

But I am of opinion that John Hover did not, by the terms of this will, take any estate in the part of the homestead devised for the benefit of the grand-children. There are no words importing a devise to him, and he is not called a trustee. Ample powers of management, and a right to receive the rents and profits, are indeed given, but these duties could be very well executed under a trust power. So far as the grand-children, who are the principal beneficiaries, are concerned, they might be performed by a general guardian. The land, it is true, is subjected to other charges than those which concern the grand-children, and it might be convenient to have them enforced through the agency of a trustee. That, however, is not indispensable. The creditors and the widow have a lien on the land, which may readily be enforced at their suit by the judgment of a court possessing equity jurisdiction. The inquiry then is, do the provisions of the will manifest an intention in the testator to vest an estate in John Hover. To devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed. (Jarman on Wills, 465.) Devises by implication are sustainable only upon the principle of carrying into effect the intention of the testator, and unless it appears, upon an examination of the whole will, that such must have been the intention, there is no devise by implication. (*Rathbone* v. *Dyckman*, 3 Paige, 9.) There are no words of devise in favor of John Hover, except in the contingency of all the grand-children dying under age and without issue. But after the language by which the charge and management of the property is committed to him, and the duty is devolved upon him of supporting the children and their mother out of the avails of the estate, the testator

proceeds to appoint him guardian of the three grand-children during their minority, *and, as such guardian,* to have charge of their estate. A guardian, as is well known, has no estate in the lands of his ward, but only a power of management. A grandfather, it is true, has no power to appoint a guardian for his grand-children by last will. (*Fullerton* v. *Jackson,* 5 Johns. Ch., 278.) This testator thought otherwise, and by assuming to do so he may be supposed to indicate the kind of authority which he intended to commit to his son John. He intended to confer such a charge of and power over the estate as a guardian may rightfully exercise over the lands of his ward. This repels the idea of the devise of a legal title nearly as strongly as if he had possessed the power which he attempted to exercise.

The cases which are relied on, in the opinion of the Supreme Court, though they furnish strong examples of the implication of a trust estate, do not, I think, require that we should affirm the existence of such an estate in this case.

In *Bradley* v. *Amidon* (10 Paige, 288), the beneficiaries of the trust, which was implied, were not required to be in existence at the time of the testator's death ; the gift embracing after-born children of his daughter, which was a circumstance relied on by the chancellor to establish a trust by implication. Besides, the testator speaks of guardians who might be appointed for the grand-children ; thus showing that a different duty than that which the law commits to guardians was intended to be committed to the trustee. *Brewster* v. *Stryker* (2 Comst., 19), is a very strong case, and I am not able to see that it differs in principle from this, except in the particulars, which I have referred to, of the attempt to make the alleged trustee a guardian. In *Leggett* v. *Perkins* (id., 297), although there was no formal devise in trust to the executors, they were in terms appointed trustees for the daughters who were the beneficiaries. This would go far to determine the character of the charge committed to them, the duties being such as could properly be performed by a trustee.

But I am of opinion that the court ought never to imply a trust from general language, where the duties committed to the alleged trustee could be executed under a trust power, and where the trust estate, if held to result from the language and general dispositions of the will, would be a violation of the statute. Here, if a devise in trust is held to be created, the trust term, being to continue during their minorities, is clearly void. The will should, therefore, I think, be construed as conferring a trust power of management, the estate vesting in the meantime in the grand-children, under the express devise to them. If the language of a deed or will is susceptible of two constructions, and by adopting one of them it would be unlawful, while if the other were followed it would be valid, the latter interpretation should be given to it, *ut res magis valeat quam pereat.*

The difference between this position and the views of the Supreme Court would, at first, appear to be slight. Both reject the alleged trust estate in John Hover. But in the argument of the opinion of the Supreme Court, a trust term is held to be created by implication, but being illegal, it is supposed that the dispositions of the will may be so changed as that the grand-children may take an immediate estate, where none was intended to be conferred on them until the expiration of the three minorities. The judgment of the Supreme Court would apparently have been the same if there had been a formal and technical devise in trust to John Hover during the three minorities. If such had been the case, my opinion, as I have said, is that the estate would have descended to the heirs-at-law. I have, therefore, attempted to show that there was no estate, but only a power conferred upon John Hover, and that the grand-children took a fee simple conditional under the formal devise to them. It appeared to me material to state these distinctions, as the case might otherwise furnish a precedent for modifying the provisions of a will in a manner which might prove dangerous, and which does not appear to be warranted by prior adjudications.

The plaintiffs had no right to institute this suit, to settle the construction of the will. They were, at best, only heirs-at-law of the testator, and if the devise of the homestead was void, as they contend, they had only to bring their direct action in the nature of ejectment to recover their shares in the premises. (*Brown* v. *Smith*, 10 Paige, 193). Although the Supreme Court has general jurisdiction at law and in equity, it cannot entertain an action for equitable relief where such an action could not have been sustained in a court of equity, though they might have sued at law in another form of action. I think the Supreme Court ought to have dismissed the complaint; but inasmuch as they have pronounced a judgment from a part of which there has not been an appeal, we cannot here direct a dismissal. But the plaintiffs, and those of the defendants who united with them, should pay the costs of the litigation, as the Supreme Court has adjudged. They have no interest in the question relating to the management of the estate during the minorities, as, according to the judgment of the Supreme Court, and of this court, nothing descended to them as heirs, which is their only title.

That part of the judgment of the Supreme Court, adjudging the supposed trust estate in John Hover to be void, does not create any embarrassment. According to our judgment, no trust estate was devised to him. The judgment, in this respect, accomplishes no practical result. The grand-children should not be prejudiced by the judgment against John Hover.

That part of the judgment of the Supreme Court which has been appealed from, does not appear to require any modification.

The judgment of the Supreme Court should be affirmed.

All the judges concurring,

Judgment affirmed.