GEORGE C. CHIPMAN AND OTHERS, APPELLANTS, v. CHARLES C. MONTGOMERY, SURVIVING ADMINISTRATOR, ETC., AND OTHERS, RESPONDENTS.

*Construction of will — who cannot maintain action for — Executor — when chargeable as trustee of personal estate.*

A mere pecuniary legatee cannot maintain an action to obtain a judicial construction of a will. He should sue for his legacy, or take proceedings before the surrogate to compel the payment of it.

An heir at law or devisee, claiming a mere legal estate, cannot come into a court of equity to ask a construction of a will. He should bring ejectment.

If, in any case, an action to obtain a judicial construction of a will can be maintained by one entitled as distributee, against an executor holding personal property, on the ground that the same is held by him in trust for the persons to whom it is bequeathed by the will, and, so far as these bequests are invalid, for the distributees, under the statute, it must be alleged in the complaint and proved upon the trial that the executor has in his possession, when the action is brought, personal property held upon such trusts.

APPEAL from a judgment dismissing the complaint herein, entered upon the trial of this action at the Special Term.

This is an action brought to obtain a judicial construction of the will, or wills, of John S. Chipman, deceased. The plaintiffs are some of his heirs at law and next of kin. Some of the plaintiffs are also legatees under the will or wills. The plaintiffs aver that they are in doubt as to the true construction of the wills, and as to the validity of the bequests and devises, and as to the rights of the parties. They pray a judicial construction, and an accounting, and, pending the action, an injunction.

John S. Chipman duly made a will, dated December 28, 1854, and another, dated September 14, 1860. Each of these disposed of the whole of his property. In the general scope, that is, except a modification as to legacies and the use of the word "heirs" in one place in the second will, the two wills are the same. A codicil to the latter modifies a legacy. The testator died September 10, 1862. The wills and codicil were proved October 22, 1860.

By the first will several of the plaintiffs had pecuniary legacies given to them severally. By the second, legacies were given to these plaintiffs, of amounts different from those in the former will.

One legacy was omitted, and a pecuniary legacy was given to another of the plaintiffs. The executrix, in two instances, paid the larger legacy; once, a legacy given by the first, and again, a legacy given by the second will. One of the claims urged on the argument, is, that the court should declare that these legacies were cumulative, and that the legatees were entitled to both.

After the legacies, each of the wills gives the residue of the estate to "my beloved wife, Sarah R., and to my three infant children, Mary, Harriet and Susan B., jointly   *   *   *   to them and their heirs and issue forever." It provides for requiring from the widow a release of dower. It then declares: "In case of the death of my said wife, or of one of the said infant children, without issue from said children, or either of them, the said property devised to them jointly shall vest in the survivor or survivors of them; but in case of the death of the four, without issue from the children, the property shall vest in the children by my first wife or their [heirs] or representatives." Besides this, there is a power to the acting executor to lease or sell real or personal estate, beneficial to the estate, or necessary to the support of the said infant children, and a power to execute proper and necessary leases and conveyances during the minority of said children.

At the death of the testator, there survived his widow, who died intestate January 3, 1870, and the following children and grandchildren : By his first wife, George C. Chipman, plaintiff, his son; Charlotte C. Sherman, plaintiff, his daughter; Mary H. Ford, plaintiff, his granddaughter; George S. Chipman and John C. Chipman, plaintiffs, grandsons. By his second wife, Mary C. Shepard, defendant, his daughter; Harriet M. Wright, defendant, his daughter; Sarah B. Chipman, defendant, his daughter, an infant. Said descendants were the only heirs and next of kin of John C. Chipman, deceased. Mary C. Shepard has lawful issue, a son, born November 19, 1873. Harriet M. Wright has lawful issue, a daughter, born June 6, 1873.

This action was commenced in June, 1873. The Special Term, on the trial, dismissed the complaint, with costs.

*Edward C. James*, for the appellants.

*L. W. Russell*, for the respondents.

LEARNED, P. J. :

By the first will, George C. Chipman had a legacy of $500 ; by the second, of $300. By the first will, Charlotte C. Sherman had $200 ; by the second, $600. George C. Chipman has received $500; Charlotte C., $600. The plaintiffs now claim that these legacies were cumulative. However that may be, I see no right which these parties, as mere pecuniary legatees, have to bring a suit for the construction of the will. They should sue for their respective legacies, or take proceedings before the surrogate to compel the payment. Nor does it seem to me that, as to these legacies, they have a 'joint right of action. This remark applies to any other pecuniary legacies, if there be any others, which have not been paid. The wills were proved in 1860, and this action was not commenced till 1873. Nor do the plaintiffs aver, as a cause of action, the non-payment of any legacies, or the demand for payment of the same. They ought not, therefore, to maintain this action, merely on the question whether or not the legacies were cumulative.

Aside from this question of the cumulation of the legacies, it seems to be of little consequence whether the former will should be deemed revoked by the latter or not. The residuary clause, which is the clause really in controversy, is identical in the two wills, except that the word "heirs" is in the second will at one place (as shown above in brackets). It cannot be thought, however, that the addition of this word changes the meaning. There is, then, to be examined, only this residuary clause, and the claim of the plaintiffs in respect thereto. The plaintiffs' claim, briefly stated, is, that the power to lease and sell, in this residuany clause, made an express trust in the wife (the acting executrix), investing her with the estate during the minorities of the three infant daughters ; that therefore the residuary devise and bequest were void, as suspending the absolute ownership of personal, and power of alienation of real estate, during these minorities ; that therefore the estate vested in the heirs at law and next of kin. And further, that this residuary devise and bequest is void, on account of the life estates in joint tenancy, and the contingent remainders, irrespective of the illegal suspension under the alleged trust ; and that therefore the estate vested in the heirs at law and next of kin.

It is to be noticed, then, that the plaintiffs do not claim as *cestuis*

*que trust,* under the provisions of the will, or as trustees. But they claim adversely to the provisions of the will, which, as they allege, create a trust. They claim as heirs at law and next of kin. So far as the real estate is concerned, it seems to be settled that the heir at law or devisee, claiming a mere legal estate, cannot come into a court of equity to ask a construction of the will. He should bring ejectment. (*Walrath* v. *Handy,* 24 How., 352; *Onderdonk* v. *Mott,* 34 Barb., 106; *Woodruff* v. *Cook,* 47 id., 304; *Post* v. *Hover,* 33 N. Y., 593; *Bailey* v. *Southwick,* 6 Lans., 356.) These plaintiffs claim that, by reason of the invalidity of the residuary clause, the real estate passed to the heirs at law, including themselves. This is a question of legal title, to be tried by a jury.

An action for judicial construction is exceptional. In such an action the court acts, as it were, the part of adviser of the parties. And the ground of such an action is, that some person, usually the plaintiff, but some times the defendant, charged with an express trust, is at a loss to know how to perform it. The action should not be extended beyond its strict limits, because litigation is tempting when both sides are paid out of the fund. Generally it is better, as in other actions, that parties should litigate to enforce positive claims, and at the peril of costs. (*Smith* v. *Rockefeller* (10 S. C. [3 Hun], 295.) When parties have acquiesced in a will for ten years, it is doubtful whether the court ought not to leave them to their ordinary rights of action.

It is said that, in regard to personal estate, a rule must apply somewhat different from that applicable to real estate; that the executor always takes the title to personal estate as a trustee; that, so far as the provisions of a will are valid, he holds it as trustee for the persons to whom it is bequeathed, and, so far as invalid, for the distributees under the statute; that a court of equity has general jurisdiction of trusts; that, therefore, an action for construction of a will may be brought against an executor holding personal property, by one entitled as distributee. (*Bowers* v. *Smith,* 10 Paige, 193.) Assuming this doctrine to be correct, its application must depend on the fact that the executor has in his possession, when the action is brought, personal property, held thus in trust either, under the provisions of the will, for the legatees, or, if the provisions are void, then for the distributees, under the statute. Now, on exam-

ining the complaint herein, it will be found that there is no allegation that Montgomery, the surviving administrator *de bonis non*, with the will annexed, of Chipman, has any personal property in his possession. It is, indeed, alleged that, when the letters testamentary were issued, there was a large amount of personal property. But that was in 1863, ten years before the suit was commenced. It may have been disposed of in the payment of debts. All the allegations of the complaint, on the matter of the personal property, seem, as far as can be judged, to be denied by the answer. The justice who tried the cause distinctly omitted to find that personal property remained unadministered at the death of Mrs. Chipman, and made no finding that Montgomery, the administrator *de bonis non*, had any personal property in his hands. On looking at the case, no proof seems to have been made as to any personal property now in the hands of the administrator unadministered. There is a stipulation that John C. Chipman left a certain amount of personal estate, but that is qualified by the statement that "this admission is not to be construed to charge any of the defendants with any sum." In the face of this qualification, and of the finding of the justice, and after the lapse of ten years from the granting of letters on the will, it would not be our duty to assume, without proof, that there was any personal estate now unadministered. It is not a reply to this objection to say, that, if the executor or administrator has improperly applied the personal estate, he is liable. If an action were brought against the executor or administrator, charging him with having applied these alleged trust funds to certain parties, while they rightfully belonged to the plaintiffs, in such an action the actual present possession of trust property might not be essential. But the present is an action for the construction of a will, for directions to the executor or trustee as to his future conduct. The ground of the action is that the trustee has, in the future, some duties to discharge, as to which he needs the advice of the court. The party, then, as a material matter, should show that there are trust funds now actually in the trustee's hands, to be disposed of in the future under the trust, express or implied.

Much of the plaintiffs' argument implied that, as a matter of fact, the controversy respected real estate. The plaintiffs urged that a power to lease and sell property showed that there was a

trust. Now, so far as personal property is concerned, that argument is not needed. An executor, Chancellor WALWORTH said, in the case above cited, always takes the title to personal estate as a trustee. But as to the real estate, the argument was pertinent. Because, unless executors have power to receive the rents and profits of lands, they take no title (1 R. S., [m. p.] 730, § 75); and it was argued that a power to lease implied a power to receive rents and profits (*Tobias* v. *Ketchum*, 32 N. Y., 319); and that therefore the executors had a trust, and that the trust was void. Whether this was sound, or not, I do not say. But it was an argument applicable to real, not to personal estate. And indeed it may be said that the whole course of the plaintiffs' argument was to prove that the provisions of the residuary clause created an express trust, and not to claim that an executor, simply as executor, held the personal estate as a trustee. I notice this line of argument, on the plaintiffs' part, as evidence that, as would also seem from the proof, the controversy was really as to real estate. And as to real estate, as was said above, the heir at law, claiming a mere legal estate, cannot bring an action for construction of the will.

In my opinion, therefore, these plaintiffs, as mere pecuniary legatees severally of a few hundred dollars, could recover their legacies, if unpaid, in a simple way, and ought not, especially at this late day, to maintain an action for construction of the will.

As heirs at law, if the plaintiffs have any title to the real estate, it is, on their own view, a legal title vesting in them on account of the invalidity of the residuary devise. As owners of a legal title, they cannot maintain such an action as this.

In respect to personal estate it is not alleged, nor proved, nor found, that there is any unadministered.

There is therefore, no need of this action to advise the administrator, as trustee, how to administer; and the action is unreasonably late. On the construction of the residuary clause and the alleged trust, I express no opinion.

The Special Term was right in dismissing the complaint, with costs. But no construction should have been given to the will, lest future actions should be prejudiced.

The judgment appealed from should be modified, without costs of the appeal to either party.

JAMES, J. (dissenting):

The jurisdiction of a court of equity, of an action for the construction of a doubtful or disputed clause in a will, is incidental to that over trusts, and exists only where the court is moved on behalf of an executor, or trustee, or *cestui que trust*, and to insure a correct administration of the powers conferred by the will. (*Bailey* v. *Briggs*, 56 N. Y., 407.) Hence, when the will creates no trust estate, or powers in trust over the real estate, one claiming merely as an heir at law cannot maintain such an action. (*Post* v. *Hover*, 30 Barb., 312, 324; 33 N. Y., 593, 602.) But if the will does create a trust estate, or powers in trust over the realty, then the heir at law, although not named in the will, may maintain the action, for in such case, if the devise of the estate subject to the power is void, the grantee of the power is trustee for the heir at law; or, if the devise of the estate in trust is invalid, there is a resulting trust in favor of the heir. (*Bowers* v. *Smith*, 10 Paige, 194, 200.) The right of the heir to maintain such an action was fully established in a very recent case in this court, and that judgment was affirmed in the Court of Appeals. (*Kiah* v. *Grenier*, 1 N. Y. S. C., 388, 390; 56 N. Y., 220.)

As to the personal estate, the next of kin may always maintain such an action, for the executor takes title to the personalty as trustee, so far as the will is valid, for the legatees, and so far as it is invalid, for the next of kin; and the correct administration of his trust requires that *it should be determined in whose favor it is to be administered,* whenever the matter is one of doubt. (*Bowers* v. *Smith, supra.*)

The foregoing remarks apply to actions where the construction of the will is the only relief sought. It frequently becomes necessary to construe a will in determining actions brought to obtain other or further relief, *such as for an accounting,* partition, injunctions, etc. In all cases, therefore, where the plaintiff is entitled to maintain an action for some recognized mode of equitable relief, of which the court has jurisdiction, and the construction of a will is a necessary incident to affording the relief sought, such construction may be given. (*Post* v. *Hover*, 30 Barb., 312, 324.)

In this case, the will creates powers in trust over the real estate, and, as it seems to me, an express trust. The testator also left a

large amount of personal estate, and, in the absence of any proof that it has been expended, lost, or used up, it presumably remains, especially as it was the duty of the trustee to preserve it; and so late as 1870 new administrators were appointed to administer the trust, and are found by the court to have duly qualified and assumed its duties. The plaintiffs are heirs at law and next of kin of the testator. The will, or wills, plainly require a judicial construction. Under the rules above stated, the plaintiffs would, as such heirs at law, if next of kin, be entitled to maintain an action solely for the construction of these instruments, in order that the trusts, or powers in trust, both as to the realty and personalty, might be correctly administered.

But this action is not brought solely for a construction of said instruments. Indeed, such a construction is merely a necessary incident to the principal relief sought, to wit: *an accounting and final settlement and division of the estate.* The court has jurisdiction of the action entirely irrespective of the construction of the wills. Assuming the wills to be valid in every provision, the plaintiffs are entitled to an accounting, and to have the whole estate discovered and preserved, for they are named in the will as the ultimate residuary devisees and legatees, in the event of the death of the children of the second wife without issue; and it is only by such an action that they can compel the preservation of the estate to await the contingency. (*Studholme* v. *Hodgson*, 3 P. Wms., 300, 303, 304.) The fact that some of the children have had issue born does not affect their right of action. It only makes the contingency more remote. The issue may die before its parent, and the parent may die without issue; and in that event, the limitation over, if valid, would take effect. Again, assuming the wills to be invalid, the estate belongs to the heirs at law and next of kin, and in such case they are entitled to maintain an action for an accounting and division of the estate. It is only in the event that such a construction is given to the wills as to cut off the provisions in favor of the plaintiffs in the residuary estate, and vest the whole thereof absolutely in the children of the second wife, that the plaintiffs are not entitled to an accounting. But to arrive at such a conclusion it is necessary to *construe the said instruments.* And hence, the plaintiffs have the right to maintain this action,

and have the said wills construed as incidental to affording the further relief sought; and if, under such construction, they are entitled to any further relief, it should be awarded; or, if not, it should be denied.

The Special Term construed the wills, and, under such construction, decided that the residuary estate was the absolute property of the children of the second wife. It thereupon dismissed the complaint, with costs against the plaintiffs. Assuming that this construction given to the wills was correct, it was error to dismiss the complaint, for the judgment giving such construction should be allowed to stand as the decision of the case. And it was also an error to award costs against the plaintiffs, for the will confessedly required construction, and the plaintiffs, being in one event the residuary devisees and legatees, were entitled to it. Under such circumstances, equity always requires the estate of the testator, who made the doubtful or obscure will, to pay the expense of ascertaining its legal effect. (*Kiah* v. *Grenier*, 1 N. Y. S. C., 388; *Oxley* v. *Lane*, 35 N. Y., 340, 351; *Smith* v. *Smith*, 4 Paige, 271.) There is nothing in this case to take it out of the operation of the established rule.

But I entirely dissent from the construction given these instruments by the Special Term.

As to the revocation of the first will by the second, the surrogate had disposed of that question. He admitted both wills and the codicil to probate, " as wills of real and personal estate, and as, taken together, forming the last will and testament of the testator. This is conclusive upon all the parties, as a former adjudication. (*Baille* v. *Butterfield*, 1 Cox, 392, 393; *Morrell* v. *Dickey*, 1 Johns. Ch., 153, 156.) But it still leaves open the question as to what construction is to be given to the three instruments, when so taken together.

As to the money legacies, the law is well settled. They are presumed to be cumulative, unless the contrary intention is clearly expressed. (*Hooley* v. *Hatton*, H. & W. Lead. Cases in Eq., 285; *Dewitt* v. *Yates*, 10 Johns., 156–158.) The right of the legatee to several legacies, bequeathed by different instruments, is not repelled by circumstances which only raise a mere balance of an argument that the legacies are substitutional. The primary and not the residuary

legatee is entitled to the benefit of the doubt the form of the bequest has created. (*Lee* v. *Pain*, 4 Hare, 236; *Wilson* v. *O'Leary*, L. R. [7 Ch. App.], 454.) In this case there is no evidence of intention sufficient to overcome the presumption; and, as both instruments have been established, we are bound to give full force and effect to the former, except so far as it is irreconcilably inconsistent with the latter. (*Brant* v. *Wilson*, 8 Cowen, 56; *Nelson* v. *McGiffert*, 3 Barb. Ch., 158.) As to the money legacies, therefore, so far as any matter concerning them may enter into this case, they are to be construed as cumulative, and not substitutional.

The residuary clauses in both wills are identical, and their legal construction is the important matter to be determined. In this we are to be guided by the intentions of the testator, as gathered from the language of the instruments and the extrinsic facts known to him. It is plain that the testator's intention was ultimately to vest the residuum in the issue of the children of the second wife, or if they left none, then in the children by his first wife, their heirs or representatives. But at the time of his death, his children by his second wife were infants, and it was necessary to provide for their support and education during their minority, as well as for the support of his wife during her lifetime. This, the testator says, he deems a paramount duty, and assigns it as the reason for making the provisions contained in his will. The purposes which he thus confessedly had in view, required the intervention of an express trust, indeed are the most usual purposes for which such trusts are created, and there can be no doubt the testator intended, by the provisions contained in the residuary clause of his will, to create an express trust in his executrix, which should vest the whole estate in her, and continue during the minority of his three children.

No particular form of words is necessary to create a trust. (*Fisher* v. *Fields*, 10 Johns., 496, 505.) The Court of Appeals, in *Vernon* v. *Vernon* (53 N. Y., 351, 359), laid down the rule in this language: "To constitute a valid trust under the statute, the trust must be declared in the instrument creating it; but it is not necessary that the purpose of the trust should be stated in the words of the statute. It is sufficient that a purpose within the statute is

clearly embraced in the language used, or that a power conferred in express terms includes a power over the estate, for the execution of which, the trustee may be clothed with the legal title." Examples of express trusts, held to have been created by implication from the language used and purposes intended, and of having pertinent application to this case, will be found in *Bradley* v. *Amidon* (10 Paige, 235); *Vail* v. *Vail* (4 id., 317, 328; 7 Barb., 226, 235); *Van Nostrand* v. *Moore* (52 N. Y., 12); *Tobias* v. *Ketchum* (32 id., 319, 327). In *Van Nostrand* v. *Moore*, it was decided that the trust will be implied, although the residuary clause commences with an absolute devise and bequest of the whole estate, as in this case. In *Tobias* v. *Ketchum*, it is held that a power to lease carries with it the power to receive the rents and profits, and when conferred upon executors who were clothed with authority to manage the estate for a given period, it created a trust which vested the title in them, although the word *trust* or trustee was not used, and there was no devise in terms to the executor.

In this case the testator, having in view the objects before mentioned, and deeming their accomplishment a paramount duty, authorizes his executrix to *lease* or sell, from time to time, such portions of his real or personal estate as in her judgment may be beneficial to his estate, or necessary for the support and education of his infant children, and for the proper support of his wife; and for this purpose, and for the purpose of managing his estate in the most prudent and economical manner, for the best advantage of his said wife and infant children, he authorizes his executor to execute all proper and necessary leases, contracts and deeds of conveyance, to the lessees or purchasers, during the minority of his infant children. So far as the power of sale above is concerned, it would be nothing more than a power in trust. But here we have the power to lease, carrying with it the power to receive the rents and profits, and the management of the entire estate, also conferred; and the declared purpose is one which requires the express trust for its due fulfillment; and the carrying out of this purpose, and application of the fund, are all placed within the judgment and discretion of the trustee. This plainly creates an express trust which vests the whole estate in the trustee, and renders it inalienable during the continuance of the trust. The power of sale may be

exercised, and the realty thus turned into personal estate; the income, and possibly a part of the principal, if necessary, may be applied to the support and education of the *cestuis que trust;* but the *corpus* of the trust fund is inalienable so long as the trust continues. (*Belmont* v. *O'Brien*, 12 N. Y., 394, 402; *Thomas' Estate*, 1 Tucker, 367, 370.)

The testator fixed the period for the continuance of this trust, as " during the minority of his infant children," and they were three in number at the time he died. To carry out his intentions, therefore, it is necessary to hold that these wills create an express trust of the whole residuum, to continue at least during these minorities. But for the purpose of the statute against perpetuities, a minority is reckoned the same as a life; and these minorities constitute an unlawful suspension. (*Hawley* v. *James*, 16 Wend., 62; *Thomas' Estate*, 1 Tucker, 367; *Post* v. *Hover*, 33 N. Y., 593, 597–599, 601; *Oxley* v. *Lane*, 35 id., 344, 345; *Everitt* v. *Everitt*, 29 id., 39, 71.) The personal estate is governed by the same rule as the realty. (*Campbell* v. *Foster*, 35 N. Y., 366, 370, 373; *Knox* v. *Jones*, 47 id., 389.) Hence this express trust is void, unless the residuum can be separated into shares which are not severally suspended beyond the period prescribed. But the testator has, by express terms, precluded such a separation. The devise to the second wife and her children. is made in joint tenancy, and not tenancy in common. They are not to take share and share alike. There are no shares. The property is given to them jointly; and this is sufficient to create a joint tenancy within the statute, especially as it is followed with provisions for survivorship. (*Coster* v. *Lorillard*, 14 Wend., 265–343.) The property is thus made an inseparable unit, and the absolute ownership of the personalty, and absolute power of alienation of the realty, are unlawfully suspended during these joint minorities.

It is obvious that the testator never intended the disastrous consequences which must result to his testamentary schemes from this illegal trust; but it is equally clear that he did intend to make the testamentary dispositions which produce these results. His intentions are not to be judged by their consequences. He is not presumed to know the law in such a case. (*Van Kleeck* v. *The Dutch Church*, 20 Wend., 480.) He is deemed to have been ignorant of the ille-

gality of the trust, and to have intended that it should be performed, and this precludes the presumption that he could have intended a different disposition of his property. Hence, when it is apparent from the language of a will that a testator means to create an express trust, the plain import of the language cannot be departed from, though it results in rendering the will invalid. (*Van Nostrand* v. *Moore*, 52 N. Y., 12, 22.) We cannot, in this case, ignore the plain intent of the testator to create this express trust for three minorities, and we must construe the wills according to that intention, although the consequence may be to invalidate the entire testament.

This trust estate precedes all other interests in the residuum, and the further dispositions of the property are dependent upon it as a precedent estate. It was the means adopted by the testator for effecting his primary object: the support and education of his infant children. We are not at liberty to conjecture whether, if he had known that these provisions were void, he would or would not have made such a disposition of his property as would result from striking out the trust and retaining the other provisions of the will. It is the duty of the court to construe the will he has made; not to make a will for him. The doctrine of *cy pres* is now limited to cases where the provisions to be cut off are independent of the other dispositions of the will, and subordinate to them, and not an essential part of the general scheme. (*Manice* v. *Manice*, 43 N. Y., 303; *Knox* v. *Jones*, 47 id., 389, 398.) Such is not this case. Here the trust estate is fundamental, and the objects for which it was created are declared by the testator to be paramount. We are not, therefore, at liberty to apply the doctrine. Nor does it help, that the residuary clause commences with an absolute devise. That was precisely the case in *Van Nostrand* v. *Moore* (*supra*), and yet, in consequence of the illegal duration of the express trust which the court implied from the further provisions of the will, the whole residuary disposition was declared void, and the property deemed to belong to the heirs at law and next of kin of the testator. The same result must follow in this case.

This conclusion renders it unnecessary to consider the further provisions of the residuary clause, which, aside from the express trust, are full of difficulty. After the three minorities, the whole

estate, given in joint-tenancy, is limited on the life of the widow, and possibly upon the life of that one of her three children who shall survive the other two ; making it necessary, in one event, for four lives to expire before it can be definitely known whether the residuum belongs to the children by the first wife, or the issue, if any, of the children of the second wife surviving them. These provisions must be construed without reference to the events which have happened since the testator's death, such as the recent birth of issue to some of the defendants. The devise must be so made, that it cannot, by any possibility, contravene the statute. (*Schettler* v. *Smith*, 41 N. Y., 328.) If the shares were separable, there would be no difficulty, for then the contingency as to each share would be determined at the death of the owner of such share. But, by reason of the joint-tenancy, the second wife and each of her three children became seized of the whole, and when any died, the whole belonged to the survivors, and so on to the last survivor, if the others, as may be the case, should die without issue. Hence, any separation is impossible ; and although the limitation is only upon one life, it is that one of the four which survives the other three, and that cannot be ascertained until three have expired. The limitations over would therefore be void under 1 Revised Statutes, 723, section 14, and the devise in joint-tenancy under section 15. If the life estates were successive, the remainders would vest on the expiration of the first two, and the overplus be cut off under section 17. But they are joint, and, if all stood, would themselves contravene the statute. They cannot all stand, and they are incapable of separation. It would seem, therefore, that they must fall, and the property pass, as in case of intestacy, wholly irrespective of the illegality caused by the express trust.

The receipt by two of the plaintiffs of their money legacies, does not debar them from maintaining this action, or receiving their inheritance, if the wills are set aside. It is true they cannot take under the will, and in avoidance of it. They must elect between the legacies and their inheritance. But an election is a choice between two or more rights, and cannot be effectually made until the party knows that he has such a choice. An act in ignorance of one's rights cannot be deemed an election, whether it be ignorance of law or fact. (*Sanford* v. *Sanford*, 9 S. C., 94 ; *Wake*

v. *Wake*, 1 Ves. Jr., 335 ; *Pusey* v. *Desbouvrie*, 3 P. Wms., 315.) The party is to be allowed to elect after the court has decided that he has an election. (*Hawley* v. *James*, 16 Wend., 142–254; *Knox* v. *Jones*, 47 N. Y., 389–399 ; 1 Sand. Ch., 388.)   Neither do these receipts create an estoppel.   There is no proof that any one has acted upon them, or been misled to their prejudice, or that any one intended to mislead.   All the elements of an estoppel are wanting. (*Sandford* v. *Sandford* (*supra*) ; *Jewett* v. *Miller*, 10 N. Y., 402.)

The judgment of the Special Term should be reversed and a new trial ordered, with costs to abide the event, on which trial an accounting should be had, and the estate settled and divided in accordance with the interests of the parties as heirs at law and next of kin, each to be charged with the amounts already received. Those parties who have received payments on account of money legacies, are to be allowed to elect between their legacy and their inheritance ; and in case they elect in favor of the legacy, they are entitled to the legacies given in both instruments.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Judgment as to dismissal of complaint affirmed, and, so far as it gives construction to the will, reversed, without costs to either party in either court.