In the Matter of the Petition of CHARLES S. SELNER and LOUIS J. SELNER, to Render and Settle Their Account as Surviving Executors-Trustees of GUSTAVE SELNER, Deceased.

JOHN C. SELNER, as Administrator, etc., of HENRY SELNER, Also Known as HENRY CHESTERFIELD and HENRY CHESTERFIELD SELNER, Deceased, Appellant; CHARLES S. SELNER and LOUIS J. SELNER, as Executors-Trustees of GUSTAVE SELNER, Deceased, and FREDERICK A. KECK, as Special Guardian for MILTON COHEN, Respondents.

Second Department, April 14, 1941.

*Peter B. Hanson*, for the appellant.

*Homer I. Harris*, for the respondents.

*Frederick A. Keck*, special guardian for Milton Cohen, an incompetent person.

CARSWELL, J. In a proceeding *inter alia* to construe the will of Gustave Selner, deceased, it has been held that he died intestate as to the corpus of the residuary estate. The administrator of the estate of his son Henry appeals and asserts that the corpus was bequeathed by implication to the testator's three sons.

The will contains four numbered paragraphs. The first paragraph directs the payment of debts and makes a nominal bequest to each of the testator's three sons. The second paragraph bequeaths and devises the residue of the estate to the three sons, in trust, with a direction that the testator's wife shall receive the entire income during her life, and after a complimentary reference to his wife the testator states: " I am specifically providing that only the income of my estate be given to my wife, in view of the fact that I know she is so kind and charitable at heart and I do not desire to have her kindness imposed upon in order that the estate

may not be dissipated." The third paragraph provides that in the event his wife predeceases the testator he bequeaths and devises the residue and remainder of his estate " as referred to in the second provision of this Will " to his three sons, naming them, share and share alike. The fourth paragraph names the three sons executors and trustees to serve without bond.

The second paragraph is concerned with the contingency of the testator predeceasing his wife. · A reading of it, without reference to the other provisions in the will, discloses no bequest or devise of the corpus of the remainder of the estate.

The third paragraph is concerned with the contingency of the wife predeceasing the testator. It pointedly refers to the residue of the estate as the property " referred to in the second provision of this Will." It contains an express bequest and devise of the residue and remainder of the estate to the three sons.

The testator died May 27, 1932, owning only personal property. The widow and three sons survived him. The contingency which occurred, therefore, was that which was the subject of partial testamentary expression in the second paragraph. The contingency which did not occur was that covered by the third paragraph.

Henry, a son, predeceased his mother and died intestate January 11, 1939. The widow died January 11, 1940. She enjoyed the life estate under the testator's will for a period of nearly eight years. No construction of the will was sought during her lifetime and she did not assume to exercise any rights in the corpus of the estate.

In construing a will, courts endeavor to ascertain and give effect to the intention of the testator. They may only do so in so far as that intention is manifested in the testament, expressly or by implication. A court may not give effect to a supposed intention of a testator which finds no expression in a will; but a court may give effect to an intention or purpose, indicated by implication, where the express language of the entire will manifests such an intention or purpose. The rule is easy of statement but its application is frequently provocative of controversy.

The authoritative cases here pertinent confirm the notion that a litigated will has no twin. They warrant, however, a further statement of principle. When a will does not contain a mention of particular property, or of an estate, or an express bequest or devise of such property or estate, in one contingency, then such property or estate may not be, in another contingency, the subject of a bequest or devise by implication through the medium of a construction of the testament. Especially so if disinherison would result and there is no express language indicating an intent to disinherit. If, however, the property or estate claimed to be

bequeathed or devised by implication, in a contingency which has occurred, has been made the subject of an express bequest or devise in another contingency, which did not occur, then effect may be given to such bequest or devise by implication, in the contingency which did occur, if a reading of the entire will makes manifest that such was the intention of the testator. When courts have refused to sustain a bequest or devise by implication, the will did not mention the property or estate, or did not direct in any specified contingency any disposition of it, and thus it did not furnish a basis in language of the testator from which to imply such an intent. Typical of the cases which sustain a bequest or devise by implication is *Masterson* v. *Townshend* (123 N. Y. 458, 462). An extreme example of those which do not is *Dreyer* v. *Reisman* (202 N. Y. 476), based on typical cases cited therein. These typical cases give effect to the distinction above stated.

In the *Masterson* case, omitting detail not pertinent, the testator provided for two contingencies. He created a life estate, of a specified yield, for his widow in certain property but made no express disposition of the corpus of the residuary estate, which consisted of real property. He then provided that in the event the real property was sold, which sale he authorized, a specified sum of money be paid each year from the proceeds to the widow; and further provided that the balance of the proceeds or corpus go to his named brother. The property was never sold. After the widow's trust ended it was contended that there was a devise by implication to the brother of the residue of the estate. The provisions relating to the first contingency, which eventuated, did not contain a devise of the residue. The language relating to the second contingency, which did not eventuate, contained an express bequest to the brother of the corpus or proceeds of the sale of the real property. It was held under the first contingency, because of the language in the second contingency, that a bequest or devise by implication was properly given effect.

In *Dreyer* v. *Reisman* (*supra*) there was a bequest and devise to specified children, without any mention of the word " property." In a later sentence there was a reference to real estate, if any, owned by the testator, which was to be sold privately, and if not thus salable, to be sold at public auction. Nowhere in the will was there a mention of what was to pass under the will. It also appeared that if effect were given to a devise by implication disinherison would result. The court held there that there could be no devise by implication.

A reading of the entire Selner will plainly reveals that the testator's primary intention was to provide for his widow by devoting

the entire income of his property to that purpose, without giving her any of the corpus. It also clearly discloses a secondary purpose — to give his property, if his wife did not need or ceased to need support therefrom, to his three sons. Carrying out such a two-fold testamentary intent involves no disinherison. This view is based on express language of the testator. In addition, the testator affirmatively revealed a desire not to die intestate as to any of his property. This is shown in the above-quoted sentence from the second paragraph of the will, which, in awkward language, gives his reason why he did not wish his wife to have any of the corpus of the estate. That expressed intention would be frustrated, if it be held that he died intestate as to the residue and remainder of his estate, because it would then follow that his widow took one-third of the corpus of the residue, under the contingency that ensued — that of the testator predeceasing the wife. During her eight years of enjoyment of the income of the estate the widow never asserted ownership or dominion over one-third of the corpus, which conduct was in accord with the expressed testamentary intent of her husband. Moreover, we have the language above quoted from the third paragraph which identifies the corpus which is to go to the three sons as being the same property as is involved in the second paragraph of the will. And in the second paragraph of the will the testator in fact devised and bequeathed the residue of his estate to the three sons, although it was for a limited purpose, to hold in trust for the benefit of the widow.

These provisions thus read and construed comply with the rule in *Post* v. *Hover* (33 N. Y. 593, 599). It is, " to devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed." Here there is more than a " strong probability." There is language of the testator which irresistibly reveals such an intention — that the three sons, after the widow died, receive the entire estate and that the wife at no time receive any portion of the corpus. The factual situation is stronger than in the *Masterson* case, the principle of which is determinative. Invoking that principle, when the first contingency occurred, a bequest by implication of the corpus may be sustained in accord with the express bequest of the testator in the second contingency, which did not occur.

This is not making a new will for the testator. It is merely giving effect to testamentary intention limited to language within the four corners of the will. It is a sustaining of a bequest by implication in exact accord with an express bequest in the will, thus giving effect to the expressed general testamentary plan and purpose of the testator.

Laymen would have no difficulty in sustaining a bequest by implication from the language in which the decedent expressed his testamentary intent. Courts should not, by self-imposed impotence, not required by the precedents, be less efficacious. They should give effect to plainly discernible, though ineptly expressed, testamentary intent.

The decree should be reversed on the law and the facts, with costs to appellant, payable out of the estate, in so far as it held that the testator died intestate as to the corpus of the residue of the estate, and the matter remitted to the Surrogate's Court to enter a decree that the testator, by implication, bequeathed to his three sons the corpus of the remainder of the estate.

HAGARTY, JOHNSTON and ADEL, JJ., concur; LAZANSKY, P. J., dissents and votes to affirm the decree, with opinion.

LAZANSKY, P. J. (dissenting). It is well established (*Dreyer* v. *Reisman*, 202 N. Y. 476, 480) that "Courts have no power, however, to construct a will where none has in fact been made, nor to import into a will new provisions which are designed to create a testamentary disposition which is neither expressed nor necessarily to be implied. (*Wager* v. *Wager*, 96 N. Y. 164, 172);" that "to uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference" (*Bradhurst* v. *Field*, 135 N. Y. 564, 568); that "To devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed." (*Post* v. *Hover*, 33 N. Y. 593, 599.) Implication cannot flow from conjecture, surmise or belief. It may not rise from an omission.

To support a gift by implication within the foregoing rules, it is inherently essential that there be the "mention, description or identification of the subject of the intended gift or devise" (*Dreyer* v. *Reisman, supra*), i. e., the "mention, description or identification" of the particular estate or interest in the property as differentiated from the property itself. The gift of this interest may be hidden behind vague, obscure and indefinite language referable to it, but it must be there in some form to warrant implication. The gift which it is sought to imply in this case is a vested remainder — a future estate to take effect in possession on the death of the life beneficiary. In the will there is no "mention, description or identification" of any such interest in the property. The only gifts actually mentioned take effect in possession immediately on the death of the testator; (1) the trust fund consisting of the residuary estate for the benefit of the wife during her life; (2) as an alternative, the residuary to the sons if the wife die before the testator.

That the testator did not intend the wife to have any part of his estate other than a beneficial interest for life; that at the time of his death the sons were his only heirs and, other than his wife, the only objects of his bounty; and that the law looks with disfavor on intestacy, are cogent factors in arousing a strong belief that the testator intended to give his sons all his property, subject to the life interest of the wife. But the testament will be searched in vain for the " mention " of any such gift; it is silent in that respect. What the testator has omitted, the court may not supply. There is no room for inference.

Two cases may be referred to as a basis for the foregoing — one where implication was favored, and the other where it was not.

In *Masterson* v. *Townshend* (123 N. Y. 458) the testator and his brother were tenants in common of certain real estate, his interest in which was devised to the executor in trust to pay over $600 of the income to his wife as long as she remained unmarried, the balance of the income to be paid to his brother. There was no actual devise of the remainder in the real estate. The will further provided that, if in the discretion of his brother and the executor it should be deemed advisable to sell the real estate, then the executor was authorized to unite with the brother in a sale of the premises, and from the proceeds to pay to the wife the sum of $600 annually as long as she remained unmarried and, upon her marriage or death before marriage *all of the proceeds were to be paid to the brother*. The real estate had not been sold at the time of the wife's remarriage. It will be noticed that there was no disposition of the remainder in the real estate, but there was of the proceeds of its sale. It thus clearly appears that the remainder was mentioned in one form of the property, but not in the other. Having given the proceeds to the brother upon the remarriage of the wife, testator must have intended to give to him the remainder of the real estate in place of which the proceeds stood. In effect, one is the other. The vested remainder in the realty is identified with, and implied through, the vested remainder in the personalty. The court held that the brother was entitled to the real estate.

In *Brown* v. *Quintard* (177 N. Y. 75) the testator was survived by four children and a son of a deceased child. He gave his residuary estate to executors in trust for certain purposes and directed that, at the expiration of a designated trust term, it be divided into four parts; that from one of the four parts his executors deduct the sum of $3,000 (afterwards by codicil reduced to $1,000) and that the part so reduced should be the part of his son Edward, " being so reduced in justice to my other children because of the money I have advanced to him." There was no disposition of the

other three parts. It was claimed that there was a devise by implication to the remaining children of those parts. The court decided that there was no gift by implication, stating: " The only division directed to be made is that there shall be four parts, of which the son Edward shall receive one, less the deduction specified in the codicil. The other three parts are not disposed of. It is true that the testator had four sons, and that the direction to divide the residue into four parts is coupled with the statement that the deduction from Edward's share is made ' in justice to my other children.' These circumstances give rise to surmise, conjecture and argument, but they prove nothing except the fact that if the testator intended to give three-fourths of the residue to his sons  *  *  *,  he utterly failed to do so."

There was a further reason given by the court for reaching the conclusion that it did, viz., to hold that the testator did not die intestate as to the residuum would be disinheriting a child of a deceased child. This was merely an extra, but not an essential, reason. (See, also, *Vernon* v. *Vernon*, 53 N. Y. 351, 361; *Leggett* v. *Stevens*, 185 id. 70; *Central Union Trust Co.* v. *Trimble*, 255 id. 88; *Minkler* v. *Simons*, 172 Ill. 323; 50 N. E. 176; *Pontius* v. *Conrad*, 317 Ill. 241; 148 N. E. 17.)

*First Nat. Bank & Trust Co.* v. *Palmer* (261 N. Y. 13) is not to the contrary. In that case there was no express provision for the disposition of the income of a trust fund under a certain contingency which actually happened. But in the trust document there were words which, the court found, clearly demonstrated that the trust fund was created for persons and purposes and for a term which necessarily included a gift to a certain one of those persons under that contingency. In effect, there was a " mention " of a gift. The dissenting opinion of KELLOGG, J., is a striking authority for holding that a gift of the remainder in the case at bar may not be implied.

There is another difficulty which may stand in the way of an implied gift of this remainder. If it were implied, what kind of a remainder to each of the sons would it be — a vested remainder to take effect in possession after the death of the wife, or a vested remainder subject to be divested in case a son died before the widow? The power of choice tends to block implication. This suggests itself because one of the sons died before the wife, leaving a child.

The testator made no disposition, express or implied, of that interest in his estate which remained after the death of his wife, and the court may not do for him what he failed to do. In my opinion, the testator died intestate as to that interest, and the decree, therefore, in so far as appealed from, should be affirmed.

Decree of the Surrogate's Court, Kings County, in so far as it held that testator died intestate as to the corpus of the residue of the estate, reversed on the law and the facts, with costs to appellant, payable out of the estate, and the matter remitted to the Surrogate's Court to enter a decree that the testator, by implication, bequeathed to his three sons the corpus of the remainder of the estate.