John J. Dillon, S.
This is an intermediate trustee’s accounting which requires a construction of the will.
Marcus Bruckheimer died on April 20, 1942. By article 1 ‘ foubth ’ ’ of his will, he left the residue of his estate in trust during the lives of his grandchildren, Edgar M. Stern and Ruth B. Stern. Article “fifth” contains a long and involved plan in which the testator attempts to dispose of the trust income. Its pertinent provisions are as follows:
‘ ‘ Fifth : I direct that my trustees shall pay and apply the net income of my estate as follows:
‘ ‘ A. During the life of my wife as follows:
1. Fifteen ($15.00) Dollars thereof shall first be paid weekly to my son, Milton Bruckheimer, during his lifetime, provided, and only if, this trust is in effect.
2. The balance remaining thereof to and for the use, maintenance and support of my wife, Lillie during her lifetime.
“ B. After my wife’s death, and provided my daughter, Sadie, be still living, they are to divide and pay the balance remaining in A. 2 above as follows:
1. 50% to my daughter, Sadie Stern.
2. 30% to my daughter, Ruth B. Oppenheimer.
*1062 3. 2%% to my grandchild, Jeanette Oppenheimer.
4. 2%% to my grandchild, Henry Oppenheimer.
5. 7%% to my grandchild, Edgar M. Stern.
6. 7%% to my grandchild, Euth E. Stern.
7. Should any of the five latter beneficiaries not be living, then his or her share shall be paid to his or her descendants per stirpes and not per capita. * * *
“ C. Should my daughter Sadie predecease my wife, then subdivision B. above shall be null and void and my trustees shall then divide and pay the said net income as follows:
1. 32%% to my grandchild, Edgar M. Stern.
2. 32%% to my grandchild, Euth E. Stern.
3. 30% to my daughter, Euth B. Oppenheimer.
4. 2%% to my grandchild, Jeanette Oppenheimer.
5. 2%% to my grandchild, Henry Oppenheimer.
6. Should any of the five latter beneficiaries not be living, then his or her share shall be paid to his or her descendants per stirpes and not per capita.
7. Should Jeanette Oppenheimer or Henry Oppenheimer be dead and leave no descendants, then his or her share shall be paid to the survivor of them or to said survivor’s descendants per stirpes and not per capita. Should neither of them leave any descendants then his or her share shall revert to and become part of the corpus of this trust.
8. Should Edgar M. Stern or Euth E. Stern be dead and leave no descendants, then his or her share shall be paid to the survivor of them or to said survivor’s descendants per stirpes and not per capita. Should neither of them leave any descendants, then his or her share shall revert to and become part of the corpus of this trust. ’ ’
Lillie Bruckheimer, the testator’s widow, died on April 26, 1947. The grandson, Edgar M. Stern, whose life was one of those measuring the duration of the trust, died on May 17,1953. The testator’s daughter, Sadie B. Stern, the recipient of 50% of the trust income after her mother’s death, died on January 31, 1957. The sole surviving trustee now asks for instructions as to the disposition of that portion of the income. The will does not expressly say what becomes of it.
The adult respondents have interposed an answer in which they ask the court to construe article 1 ‘ sixth ’ ’ of the will to mean that the trust terminated upon the death of Sadie B. Stern, in which event the question of who succeeds to her portion of the income is never reached. Article “ sixth ’ ’ provides:
*1063 “ Sixth: Should Edgar M. Stern survive my wife and my daughter Sadie, then I direct that when he reaches the age of 50 years or upon his death, whichever event then occurs first, this trust shall cease, and then shall be divided in the same manner and proportions as provided in Paragraph Fifth, subdivision C., above.”
The trustee’s preliminary objection to the court’s jurisdiction to construe a portion of the will other than that specified in the petition is not well taken. The general grant of power contained in subdivision 8 of section 40 of the Surrogate’s Court Act, and the specific grant of power in accounting proceedings contained in section 145, are ample to confer jurisdiction. The prayer for construction contained in the answer must, therefore, be considered on the merits. The construction advocated by the respondents, namely, that the trust has already terminated, and that consequently the question of the disposition of the 50% of the trust income after the death of Sadie B. Stern has now become academic, cannot be accepted. The condition specified in article “ sixth ” of the will is that Edgar M. Stern survive the testator’s wife and daughter. Since Edgar M. Stern survived the testator’s wife but predeceased Sadie, the daughter, that condition has not been fulfilled. The duration of the trust is still measured by the lives of Edgar M. Stern and Ruth E. Stern, as provided in article “ fourth ”. In a previous construction proceeding involving this same will, the Court of Appeals pointed to this ‘1 unequivocal language ’ ’ as the measure of the continuance of the trust. (Matter of Bruckheimer, 294 N. Y. 31.) Since Ruth E. Stern (Kaplan) is still living, the trust will continue until her death.
It is. therefore, essential that a determination be made as to the income beneficiaries who succeeded to the interests of Sadie B. Stern after her death. In the absence of any express provision in the will, it remains to be seen whether the testator’s intent can fairly be implied. If not, the result is partial intestacy. The special guardian for the infant respondents has submitted a report in which he argues that the phrase “ five latter beneficiaries ”, which appears in article “ fifth B (7) ” of the will should be construed to mean “ six latter beneficiaries ”. Such a construction would supply the missing alternative disposition of the income in the event of the death of Sadie B. Stern during the life of the trust. It would mean that her share of the income would then become payable to her descendants. The proposition has been argued by the special guardian with force and skill, but the court is unable to accept *1064 it. It will be noted that paragraph “ B ” of article “ fifth ” proceeds from the express assumption that “ After my wife’s death * * * my daughter, Sadie, be still living ”. The testator then provides, in the following six subdivisions, for the payment of the trust income to six persons, of whom Sadie is the first. Having assumed Sadie’s continued existence, he then tells us what is to happen if any of the ‘1 five latter beneficaries ” should die. The court concludes that this language was deliberately chosen, and that the substitution of “ six ” for ‘ ‘ five ’ ’ would be an unwarranted revision of the will.
The court favors the viewpoint of the trustee, which is that the opening words of paragraph ‘ ‘ G ” of article ‘1 fifth ’ ’ should be construed as though they read ‘ ‘ should my daughter, Sadie, predecease the termination of the trust ”. In this respect there is no essential difference between this case and Matter of Selner (261 App. Div. 618), in which the Appellate Division in this department found a gift of trust funds by implication. There the testator left his residuary estate in trust, with income payable to Ms wife for life. He further provided that if his wife should predecease him, the residue should go to his three sons. Nothing was said about the disposition of the principal upon his wife’s death if she survived the testator, which in fact occurred. Belying largely on Masterson v. Townshend (123 N. Y. 458), a majority of the Appellate Division held that the will showed a clear intention to vest the entire estate in the three sons upon the death of the wife. The controlling principle was stated to be that ‘1 when the first contingency occurred, a bequest by implication of the corpus may be sustained in accord with the express bequest of the testator in the second contingency, which did not occur (P. 622.) A parallel situation is presented here. By article ‘1 fifth B ” of his will, the testator provided for the division of trust income in the ratio of 65% to his daughter, Sadie and her children, and 35% to his daughter, Buth B. Oppenheimer, and her children. In paragraph “ 0 ” of the same article, based upon the death of Sadie before her mother, he made precisely the same division between the two family groups. What he omitted to do expressly was to provide for the death of Sadie after her mother but during the life of the trust. It would seem that in accordance with Matter of Selner (261 App. Div. 618, supra) the court should find a bequest by implication, in the contingency wMch occurred, corresponding exactly to the directions of the testator in the contingency which did not occur.
*1065 In Matter of Englis (2 N Y 2d 395, 402, 403), the Court of Appeals referred to Matter of Seiner (supra) as “ rare and exceptional ”, but apparently approved of the result. It was pointed out that the principle of the Seiner case has only been applied where ‘ ‘ one could discover a group of people to whom as a group the testator limited his beneficence ”. This case falls within that classification. The group consists of the testator’s two daughters and their children, following the death of the widow. The bounty of the testator is confined strictly to that group under both paragraphs “B” and “ C ” of article “ fifth ”. No violence is done to the intent of the testator if we conclude that upon the death of Sadie, whether before or after her mother, her two children were to succeed to her share of the trust income, in addition to receiving their own. The will is, therefore, construed to mean that from the date of Sadie’s death the net income shall be paid as provided in the various subdivisions of paragraph “ C ” of article “ FIFTH ”.
This disposition achieves several desirable results. It not only avoids intestacy, but it prevents the frustration of the testator’s purpose, as expressed in article “nineteenth” of the will, to make no other provision for his son, Milton, than the minor income payments directed in article ‘1 fifth ’ ’, paragraph “A (1) ”. It also preserves the 65-35 division of trust income as between the Stern and Oppenheimer family groups, which appears throughout article “ fifth ”. Of course, it follows from the conclusion reached that in view of the death of Edgar M. Stern, the 32%% of income payable to him under paragraph “O (1) ” of article “fifth ” will now be payable in accordance with subdivisions “6” or “8” of the same paragraph, which ever may be appropriate. The special guardian has pointed out that subdivision “8” of article “fifth (0) ” may provide for an unlawful accumulation of income, but it is sufficient to say that such invalidity could arise only upon a contingency which has not yet occurred and which may never occur.
In the light of the decision herein, the question as to the disposition of the trust principal now becomes academic. Accordingly, the court will reserve for the future any determination thereof.
The special guardian has requested additional relief. In accordance with this recommendation, the accounting trustee is directed to file supplemental schedules correcting and amplifying the account in accordance with the recommendations made at pages 14 to 26 of the special guardian’s report.
*1066 By reason of the failure to join the infants, then in being, as parties in the two prior accounting proceedings, the decrees entered therein are not binding on said infants and will be considered as reopened. The special guardian will examine said prior accounts and take whatever action he may consider appropriate for the protection of his wards.
The question of attorney’s fees will be deferred until the settlement of the final decree.
An intermediate order, to be settled on notice, may be submitted in accordance with this opinion.