In the Matter of the Accounting of HANOVER BANK et al., as Executors of MURIEL K. BELLAMORE, Deceased, Respondents. ROBERT KONOVE, as Special Guardian of SUSAN O. BELLAMORE and Another, Infants, Appellant; KENDALL BELLAMORE, Respondent.

First Department, December 13, 1962.

*Robert Konove,* as special guardian, appellant in person.

*Philip Berg* for Kendall Bellamore, respondent.

BREITEL, J. P.  Involved on this appeal is the construction of a will and codicil.  The Surrogate held that a trust created by the codicil would lapse shortly into intestacy, despite a general residuary clause in the will.  The practical effect is to favor the husband and son of the testatrix, rather than the son and his children who are the beneficiaries of the trusts created out of the residuary estate.  The amount of the disputed trust is small in relation to the whole estate, and, under any interpretation, does not pass outside the circle of designated beneficiaries of the will.

For reasons to be discussed, the construction by the Surrogate should be affirmed, and a limited intestacy found to result from a failure to make disposition in the circumstance which is likely to arise.  To that extent the general residuary clause is inapplicable to the codicil trust.  This, because of express provision in the codicil specifying when the trust principal falls into the residuary estate, which provision should be construed to be exclusive.

Testatrix died in 1957, leaving a will executed in 1954 and a codicil in 1956.  She was survived by her husband, son and two grandchildren.  Her estate proper, excluding a power of attor-

ney, was worth well over $300,000. In the will, apart from particular bequests not material here, she exercised a power of appointment in favor of the two granddaughters in a trust estate derived from her father, and created further trusts out of her own residuary estate.

The residuary estate is described as "all the rest, residue and remainder of my estate, both real and personal, of whatever kind or nature and wheresoever the same may be situate". One half was given in trust for the benefit of her son for his life, and on his failure to survive the testatrix or on his subsequent death to the two granddaughters on various stipulations. The other half was also given in trust for the benefit of the son, but only until the oldest child of the son attains 21 years, when the remainder should be divided among the son's then surviving children and the issue of deceased children. There were other appropriate provisions in the case of the prior death of the son or the eventual failure of all issue.

Thus far, the purpose and effect are clear, and the plan to benefit the son and his children evident enough. Notably, there was keen discrimination in providing direct and accelerated or deferred benefits to the grandchildren, and between the distribution of income and principal.

The codicil, apart from some changes in the particular bequests, created the trust in dispute. The entire provision with respect to it reads: "THIRD: I give, devise and bequeath to my Trustees hereinafter named the sum of Twenty-five Thousand Dollars ($25,000.) to be held by them as a separate Trust Fund, IN TRUST, nevertheless, to invest and reinvest the same, to collect the rents, income and profits thereof, and to pay the net income arising therefrom to my son, KENDALL BELLAMORE, until he arrives at the age of fifty (50) years. I direct that such income be paid to my son in as nearly quarterly-yearly payments as may be practicable. Upon the death of my son prior to his attaining the age of fifty years, or in the event he predeceases me, upon my death, I direct that the principal of said Trust Fund with any accumulated interest thereof, shall become a part of my residuary estate."

The provision provides for two eventualities but not that of the son attaining age 50. That event is expected to occur on July 12, 1963, and the trustees seek a construction of the will and codicil.

If the last sentence in the paragraph were omitted, there would be less difficulty, for the reversion would pass to the residuary estate under the will, not only in the eventualities specified in the last sentence, but in the one that is expected to

arise midyear next. Then there would be no problem either of intestacy or interpretation; the residuary clause would have unlimited play in disposing of all assets for which provision was not otherwise made.

But the last sentence is in the paragraph and it provides expressly for the two eventualities in which the principal is to pass to the residuary estate. It omits a third eventuality which is about to occur. Notably too, but not by itself decisive, the last sentence was wholly unnecessary unless it was designed to do more than merely duplicate all of the functions that would have been performed by the general residuary clause.

Insofar as the language of this provision is concerned there is a failure to dispose of the principal in the event the son attains 50 years. There is little doubt that the failure was inadvertent. But this conclusion offers no solution in construing the testatrix's intention, the all-inclusive criterion in testamentary construction. It is just as, or more, likely that she intended (and her lawyer draftsman too) that the son keep the principal after attaining age 50, as that the son and the grandchildren share variously in the principal under the residuary trusts. There is no legally admissible way suggested to reach her actual (i.e., subjective) intent. In this situation, the courts are properly confined to reading her intent as objectively expressed in the writings, namely, the will and codicil.

The specifications of when the principal reverts to the residuary estate ought to preclude a court-made addition to those expressed. On that premise, if one reads the residuary clause together with the codicil provision, it becomes evident, as a matter of the expressed intention, that the general residuary clause is limited in this small particular by the codicil provision. This, although on a reading of the general residuary clause alone all undisposed assets would be swept under its coverage.

If one attempts to reach intent by exploring the testamentary plan, an entirely proper approach, no illuminating insight appears. It is evident that the $25,000 trust had some special purpose, but it is undisclosed. As the Surrogate pointed out, it is difficult to believe that the trust was set up for the purpose only of providing the son with the income of $25,000 for a maximum period of six or seven years. The son was to receive income for his own benefit under the first residuary trust. He was also to receive income under the second residuary trust until his oldest child attained 21 years of age. There is reference to other provision for the husband in addition to a cash legacy. The grandchildren are the beneficiaries of the power of appointment exercised by testatrix with respect to her father's estate. The

size of that estate is, of course, not presented in this record, but is a significant part of the testamentary plan. The oddest thing is that, although the eventuality of the son's attaining his 50th year is not covered, it was the most likely event when, in 1956, the codicil was executed.* With these counter-balancing factors, some seen clearly and others sensed only as wavering shadows, it is perilous to speculate what the testatrix had in mind or would have had in mind, when she carved out this separate, smaller trust. Disposition of the principal through the residuary estate is the least likely result intended, and there simply are not words enough to imply a gift of the principal to the son.

The mechanical application of a general residuary clause or the easy application of the presumption against intestacy, in the face of the peculiarities of the codicil paragraph, do not meet the sensitive problem here. The counter-indications suggest a failure that is intestacy in fact, even if one may believe it was not intended. Moreover, it is invariably stated that a residuary clause like any other is to be construed in accordance with the intention expressed and is or may be qualified by limitations appearing elsewhere in the testamentary instruments.

In the light of the analysis it is hardly necessary to discuss further the son's alternative argument in which he urges a gift by implication to him of the principal when he attains 50 years of age.

The conclusions find support in the teachings of the authorities. One must, however, be careful. Exegesis from cases, like exegesis from Scriptures, if indiscriminate, can produce seemingly contradictory assertions. Express words of gift are necessary but, on the other hand, the courts may not rewrite a will. Gifts by implication are not favored, but they will be given effect if the intention is evident. To be sure, there is a presumption against intestacy but, on the other hand, intention is the prime criterion and by its exhaustion may even dictate intestacy (*Matter of Englis,* 2 N Y 2d 395).

True, a general residuary clause will be given general effect, but this too may be qualified if other testamentary provisions disclose an intention to narrow its general effect (see *Lamb* v. *Lamb,* 131 N. Y. 227, 234–345; cf. *Matter of Miner,* 146 N. Y. 121, especially 130–131, involving a will drawn by a layman testator). So, too, the presumption against intestacy is a strong one, and particularly where there is a residuary clause. But the paramount criterion, as has been said, is the intention of the testator (e.g., 7 Warren's Heaton, Surrogates' Courts [6th ed.], § 70,

---

* The record advises that the son is in good health, and there is no reason to believe that his health was otherwise in 1956.

pars. 6–9). The intention should not be strained nor the inquiry become so subjective that the court engages, in effect, upon a rewriting of the will. Long ago, Judge GRAY said: "In the construction of a testamentary disposition, where the language is unskillful, or inaccurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent, subject only to the proviso that no rule of law is thereby violated." (*Masterson* v. *Townshend*, 123 N. Y. 458, 462.) This language was quoted by Judge DESMOND, now Chief Judge, in *Matter of Englis* (*supra*) in holding that a gift would not be implied even if intestacy resulted, so long as the intent to make the gift was not clear enough, and, this, despite the presumption against intestacy.

In *Matter of Hoffman* (201 N. Y. 247) the Court of Appeals declined to apply a general residuary clause in a will to an incomplete gift in a codicil, and held that there was a limited intestacy. The case is distinguishable, because it involved a so-called "residue of a residue", but the limitations on the presumption against intestacy are stated in bold terms. Said the court, per Judge GRAY (p. 256): "This is not a case where the presumption against intestacy is available; it is simply the case of a contingency not provided for and whose happening has left portions of the residuary estate undisposed of." *Matter of Disney* (190 N. Y. 128) is to the same effect. There, a general residuary clause was present, and the court nevertheless found a limited intestacy. Although the court refers to "clear and unambiguous" language limiting the residuary clause, the fact is that there were no direct words of restriction on what passed to the residuary estate or who was to take. The case, therefore, is quite close, for there, too, the testator made provision for a contingency that did not occur and made no provision for one that did occur.* Moreover, the failure was probably that of the scrivener. Nevertheless, the residuary estate was held not to include the failing share, and, moreover, unlike here, the intestacy had the effect of redistributing the assets outside the circle of designated beneficiaries.

The point of the matter is. that the courts have always caveated the application of the generality of the residuary clause and the presumption against intestacy with subordination to the testator's intention as made evident in the testamentary documents (3 Jessup-Redfield, Surrogates' Law and Practice [rev. ed.], § 2205; 7 Warren's Heaton, Surrogates' Courts [6th ed.], § 70, pars. 6–9, *supra*; 2 Jarman, Wills [8th ed.], pp. 1020–1025; 96

---

* (Accord: *Matter of Tamargo,* 220 N. Y. 225; *Matter of Maybaum,* 296 N. Y. 201.)

C. J. S., Wills, § 1226). The occasion is very rare when the exception may be invoked, the special class of " residue of a residue " cases being the commonest (see, e.g., *Wright* v. *Wright*, 225 N. Y. 329, 340-341). But the exception has always been preserved in general terms and is a corollary to the basic principle of will construction. In this case the testamentary plan does not accept reversion of the lapsed trust into the residuary estate. If anything, a gift by implication to the son would do less violence to the meaningfulness of the trust from its very inception. But, as noted before, a gift by implication requires more than present here. The codicil is too definite in terminating the son's interest at age 50 to carry the burden of an implication that he was to receive the principal at that time.

Accordingly, the decree of the Surrogate so far as appealed from should be affirmed, with costs to each of the parties filing briefs payable out of the estate.

EAGER, J. (dissenting). The construction adopted by the Surrogate and by the majority here tends to contravene the obvious testamentary scheme of the testatrix and, in fact, fails to give effect to her will as written. Therefore, I cannot agree to an affirmance of the decree of the Surrogate.

The testatrix was survived by a husband, a son and twin granddaughters (children of her son). By her will and codicil, the provisions for her husband and son were limited to certain bequests, which, when compared to her estate as a whole, were minor in value or amount, and to certain trust income benefits for her son during specified periods. Then, finally, according to the terms of the will, the corpus of all the residue of her estate was to vest in her grandchildren or their issue, and particularly, in this connection, she was favoring her twin granddaughters.

We are bound, of course, to give " effect to the express general testamentary plan and purpose of the testator ". (*Matter of Selner*, 261 App. Div. 618, 622, affd. 287 N. Y. 664.) Clearly apparent from the will and codicil is the plan of the testatrix here, after providing trust income benefits for her son, to ultimately vest the remainder interest in the corpus of all the residue of her estate in her grandchildren, the children of her son. There being nothing in the codicil indicating that she intended to vary this plan, her intention should prevail, and it was improper for the court to arrive at a construction which takes away from the grandchildren a portion of the corpus of the estate and passes it as intestate property to her son and husband.

The will and the codicil are to be taken and construed together as one instrument; and the codicil should not "have any other operation than may be necessary to give effect to its provisions as the later expression of the testator's will." (*Hard* v. *Ashley*, 117 N. Y. 606, 613.) A codicil should not operate to revoke or cut down "a previous devise or bequest beyond the clear import of the language used. Effect must be given, so far as possible, to all parts of the will, and when the several provisions can be reconciled consistently with the intentions of the testator, as they appear and may be gathered from the original instrument and codicil, that construction will be favored. An estate once devised, or an interest intended to be given, will not be sacrificed on the ground of repugnancy, when it is possible to reconcile the provisions supposed to be in conflict." (*Goodwin* v. *Coddington*, 154 N. Y. 283, 286.) So, while the provisions of the codicil here, as the later expression of testatrix' intent, are to be given full effect in accordance with their terms, the disposition made by the testatrix of her residuary estate must also be honored as fully as is consistent with such terms.

Here, by the testatrix' will, she expressly disposed of "all the rest, residue and remainder of my estate, both real and personal, of whatever kind or nature and wheresoever the same may be situate". Then, by her codicil containing the provisions for the special trust fund of $25,000 for the benefit of the son until age 50, she expressly provided that she did "ratify and confirm my said Last Will and Testament in every respect save so far as any part of the same is inconsistent with this Codicil." So, clearly, the effect of the codicil was merely to take the said sum of $25,000 out of the residuary estate to the extent necessary to create the trust and to carry out the provisions in connection therewith. Then, there being no express disposition by the codicil of the remainder on the termination of the trust when the son was to reach the age 50, such remainder would then pass under the said general residuary clause and not as intestate property.

The "inference is clear and strong" that the testatrix did not intend to die intestate as to any part of her estate (*Matter of Haber*, 281 App. Div. 383, 385, affd. 306 N. Y. 706). "The presumption against an intestacy is particularly strong where the subject of the gift is the residuary estate." (*Matter of Birdsell*, 271 App. Div. 90, 95, affd. 296 N. Y. 840.) So, here, certainly we may and should give full effect to the general rule "that in a will of personal property the general residuary clause carries whatever is not otherwise legally disposed of." (*Kerr* v. *Dougherty*, 79 N. Y. 327, 346.)

It is true that there were in testatrix' codicil express provisions for the falling of the principal of the trust into the residuary estate under certain specified contingencies, namely, in the case of the death of her son prior to his attaining the age of 50 years or in the event he predeceased her. But the presence of these provisions, applicable under the stated contingencies, is not at all inconsistent with an intention on her part that her general residuary clause should also embrace the trust fund remainder in the contingency not provided for, namely, in the event the son should reach age 50. Rather, it seems inconceivable that the testatrix would intend that the remainder pass differently in case the son should reach age 50. For instance, no reason is or can be advanced for believing that the testatrix, on the one hand, would want the principal of the trust fund to pass into the residue if the son died just before reaching age 50, say at 49½ years, but that, on the other hand, if the trust continued until he had reached such age, then that she would not want it to so pass.

The Surrogate reasoned, in part, that (33 Misc 2d 256, 258) '' If we permit the remainder to go into the residuary estate in the contingency not provided for it would be in effect a gift by implication to the residuary estate.'' Such reasoning, however, is clearly inapposite. The residuary clause, in the testatrix' will, either embraces the remainder, or it does not; and this depends upon her intention to be ascertained from the will and codicil, construed as a whole.

I conclude that the Surrogate's determination, which has the effect of cutting down the residuary estate, to exclude the corpus of this particular trust fund created by the codicil, must be rejected. The decisions cited by him are not controlling and do not support his determination in that they all involve cases where there was a failure of a portion of the residuary estate. To affirm the Surrogate's decree — and I am summarizing — not only tends to defeat in part the testamentary scheme of the testatrix and the express terms of the residuary clause as written in her will, but results in a disposition of a substantial portion of the principal assets of her estate in a manner clearly contrary to her wishes, namely, as intestate property and, as such, to her husband and her son who were, according to her intentions, to take only in a limited manner, as specified, in her estate.

The decree of the Surrogate should be modified to provide that, when the son arrives at age 50, the corpus of the trust fund set up for his benefit by the codicil shall pass under the residuary clause of the will.

Rabin and Bergan, JJ., concur with Breitel, J. P.; Eager, J., dissents in opinion in which McNally, J., concurs.

Decree, so far as appealed from, affirmed, with costs to each of the parties filing briefs payable out of the estate.